MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2021 ME 58
Docket:       Cum-20-63
Argued:       September 7, 2021
Decided:      November 23, 2021

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ., and HJELM, A.R.J.
Majority:     MEAD, GORMAN, JABAR, HUMPHREY, and CONNORS, JJ., and HJELM, A.R.J.
Dissent:      HORTON, J.

JOHN P. THURLOW

v.

ZAKIA C. NELSON et al.

JABAR, J.

[¶1]  John P. Thurlow appeals from an order entered in the Superior Court (Cumberland County, *Stewart, J.*) in favor of Zakia C. Nelson and Ross Nelson granting the Nelsons' special motion, pursuant to Maine's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, to dismiss Thurlow's defamation complaint.[1]  *See* 14 M.R.S § 556 (2021).  For the reasons set out

---

[1]  We invited amici briefs to address five questions related to this case and received six briefs in response.  The briefs were from (1) the American Civil Liberties Union of Maine Foundation and Professor Jeffrey Thaler; (2) the Reporters Committee for Freedom of the Press and fourteen other media organizations; (3) the Maine Trial Lawyers Association; (4) the Attorney General of the State of Maine; (5) Lawrence C. Winger, Esq.; and (6) Pine Tree Legal Assistance, Inc., the Maine Coalition to End Domestic Violence, the Maine Coalition Against Sexual Assault, Michelle R. King, Esq., and Jacqueline R. Moss, Esq.

2

below, we vacate the order and remand for the Superior Court to enter an order denying the special motion to dismiss.

## I. BACKGROUND

[¶2]  The following account is drawn from the complaint, the special motion to dismiss, and the accompanying affidavits.  *See Nader v. Me. Democratic Party* (*Nader II*), 2013 ME 51, ¶ 2, 66 A.3d 571.  On September 24, 2019, Thurlow filed a complaint in the District Court (Portland) alleging a claim of defamation relating to a letter that the Nelsons sent to school officials.  The Nelsons removed the action to the Superior Court pursuant to M.R. Civ. P. 76C and filed a special motion to dismiss with supporting affidavits pursuant to 14 M.R.S. § 556, Maine's anti-SLAPP statute.  Thurlow filed an objection to the Nelsons' special motion to dismiss, accompanied by his own affidavit, and requested a hearing on the Nelsons' motion.

[¶3]  Thurlow's defamation claim centered on a letter that the Nelsons had sent to the Scarborough board of education, the superintendent of the school district, the principal of the school, and a representative of the Maine Department of Education.  In the letter, the Nelsons accused Thurlow of numerous acts of misconduct surrounding the problems their son had with being bullied at school.  Among other things, the Nelsons asserted that Thurlow

(1)  had made retaliatory and threatening remarks toward them to discourage their advocacy, in violation of their First Amendment rights;

(2)  had illegally denied them access to their son's education records and destroyed school records;

(3)  had hurt, bullied, and intimidated their son, and the Nelsons questioned whether Thurlow had done this to other children;

(4)  had intentionally disregarded state and school board policy as it pertained to bullying;

(5)  had neglected student well-being and covered up school wrongdoing; and

(6)  was unfit to hold his position or any position at any school.

[¶4]  In the affidavit Thurlow filed in opposition to the Nelsons' motion to dismiss, he addressed the specific allegations contained in the Nelsons' letter and detailed the steps he took to address the problems their son was having at school.  Thurlow specifically denied any misconduct, including bullying, intimidating, or hurting the Nelsons' son.  He denied discouraging the Nelsons' advocacy or destroying school records.  He referenced his background and experience to refute the Nelsons' allegations that he was unfit to hold his position.  He also stated that the school had initially placed him on paid leave pending an investigation of the Nelsons' allegations but that he had been exonerated of any wrongdoing and had been permitted to return to work after an investigation undertaken by a third party.

[¶5]  Following a review of the complaint, motion, opposition, and affidavits, the trial court granted the Nelsons' special motion to dismiss and

4

dismissed Thurlow's complaint. Applying our case law governing anti-SLAPP motions, the court first determined that the Nelsons met their burden of establishing that they had engaged in petitioning activities when they sent the letter complaining of Thurlow's conduct. The court then determined that Thurlow did not meet his burden of presenting prima facie evidence that the Nelsons' petition activity was "totally false" and therefore "totally devoid" of any reasonable factual support. Based on these determinations, the court denied Thurlow's request for a hearing on the anti-SLAPP motion.

[¶6] Thurlow timely appealed the court's decision. *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶7] Thurlow contends on appeal that the trial court erred in granting the special motion to dismiss and thereby violated his constitutional rights to access the court to seek redress and to a jury trial. Thurlow also contends that the trial court erred by failing to give him all favorable inferences when considering the special motion to dismiss.

## A. Anti-SLAPP Statutes

[¶8] SLAPP is an acronym for Strategic Lawsuits Against Public Participation. SLAPP lawsuits are lawsuits that are filed with the goal "to stop

citizens from exercising their political rights or to punish them for having done so." George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Env't L. Rev. 3, 5-6 (1989). "SLAPP plaintiffs do not intend to win their suits; rather they are filed solely for delay and distraction, and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances." *Morse Brothers*, *Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842 (quotation marks omitted); *see* Austin Vining & Sarah Matthews, *Overview to Anti-SLAPP laws*, Reporters Committee For Freedom of the Press, https://www.rcfp.org/ introduction-anti-slapp-guide*.* To prevent this infringement on the right to petition, many states have passed "anti-SLAPP" statutes. In our first discussion of Maine's anti-SLAPP statute, we noted that "[t]he typical mischief that the anti-SLAPP legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Morse Brothers*, 2001 ME 70, ¶ 10, 772 A.2d 842 (alteration omitted) (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 940 (Mass. 1998)). Since then, however, we have also remarked on the exceedingly broad language

6

found in the statute and our concern over its reach. *Gaudette v. Davis* (*Gaudette I*), 2017 ME 86, ¶ 22 n.9, 160 A.3d 1190.

[¶9]  We have also identified and struggled with the "tension between at least two coexistent constitutional rights"—the right to access the courts and the right to petition.[2]  *Id.* ¶ 6.  The concern is that "[b]y protecting one party's exercise of its right of petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party's exercise of its right to petition, even when it is not engaged in sham petitioning.  This conundrum is what has troubled judges and bedeviled the statute's application." *Duracraft*, 691 N.E.2d at 943 (footnote omitted).  But as we analyze a plaintiff/nonmoving party's lawsuit, we must keep in mind that "SLAPPs are by definition meritless suits." *Id.* at 941 (citing John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPS*, 26 Loy. L.A. L. Rev. 395, 399 (1993)).

[¶10]  In addition to recognizing the tension between the right to access the court and the right to petition the government, many courts interpreting

---

[2]  We have stated that the plaintiff has the right to access an open court system protected under both article I, section 19 of the Maine Constitution and the United States Constitution.  *See Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶¶ 23-25, 41 A.3d 551 (explaining that the Maine Constitution provides that "the courts must be accessible to all persons alike without discrimination, at times and places designated for their sitting, and afford a speedy remedy for every wrong recognized by law as remediable in a court" and that "right of access to the courts has also been recognized as a substantive right applicable to plaintiffs in civil actions under the Due Process Clause of the Fourteenth Amendment." (quotation marks omitted)).

anti-SLAPP statutes have addressed the impact these statutes have on a litigant's right to a jury trial. *See, e.g.*, *Davis v. Cox*, 351 P.3d 862, 875 (Wash. 2015) ("The constitutional conundrum that [Washington State's anti-SLAPP statute] creates is that it seeks to protect one group of [citizens'] constitutional rights of expression and petition—by cutting off another group's constitutional rights of petition and jury trial."); *Opinion of the Justices*, 641 A.2d 1012, 1015 (N.H. 1994) ("A solution [to SLAPP suits] cannot strengthen the constitutional rights of one group of citizens by infringing upon the rights of another group."). Although we addressed the conflict between the right to access the court and the right to petition in *Gaudette I* and acknowledged that "other constitutional rights may also be implicated," we have never directly addressed the impact of our anti-SLAPP statute on a litigant's right to a jury trial under article I, section 20 of the Maine Constitution. 2017 ME 86, ¶ 6 n.4, 160 A.3d 1190. We address the issue today.

## B.  Maine's Anti-SLAPP Statute

[¶11]  Maine's anti-SLAPP statute was enacted by the Maine Legislature in 1995.[3]  P.L. 1995, ch. 413 § 1.  Since then, we have had numerous

---

[3] Title 14 M.R.S. § 556 (2021) states in part:

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving

8

opportunities to address the tension between the conflicting constitutional interests.  *See Gaudette I*, 2017 ME 86, ¶ 22 n.9, 160 A.3d 1190 ("Our shifting interpretations of the anti-SLAPP statute reflect our continuing struggle with the sweeping breadth of the statute, particularly when compared to the anti-SLAPP statutes of other states.").

[¶12]  In *Morse Brothers*, we adopted a two-step framework for consideration of an anti-SLAPP special motion to dismiss.  The first step required the trial court to "determine whether the claims against the moving party are based on the moving party's exercise of the right to petition pursuant to the federal or state constitutions."[4]  *Morse Brothers*, 2001 ME 70, ¶ 19, 772

---

party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss.  The special motion may be advanced on the docket and receive priority over other cases when the court determines that the interests of justice so require.  The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party.  In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

[4] Title 14 M.R.S. § 556 defines "a party's exercise of its right of petition" as

any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

A.2d 842.  If the defendant/moving party established that he or she was involved in petitioning activities, which is a question of law, then the trial court proceeded to the second step, where "the burden shifts to the responding party to establish, through pleadings and affidavits, 'that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party.'"  *Id.* ¶ 20 (quoting 14 M.R.S. § 556).  In *Morse Brothers*, we prescribed a "converse summary-judgment-like standard" that called for a review of "the evidence in the light most favorable to the [defendant/]moving party because the [plaintiff/nonmoving] party bears the burden of proof when the statute applies."  *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶¶ 17, 29-30, 41 A.3d 551; *see Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 8, 847 A.2d 1169.

[¶13]  Eleven years later, in *Nader I*, to avoid an unconstitutional application of the law, we recognized that the standard used in *Morse Brothers* was a "creature of case law" and did "not appear in the language of the statute" and that "[a] plain reading of section 556 does not dictate the converse summary-judgment-like standard, and it is this standard, not section 556, that burdens the constitutional rights at issue."  2012 ME 57, ¶¶ 31-33, 41 A.3d 551.

10

We changed the standard so that it would "permit courts to infer that the allegations in a plaintiff's complaint and factual statements in any affidavit responding to a special motion to dismiss are true." *Id.* ¶ 33. We imposed upon the plaintiff/nonmoving party a prima facie standard consistent with the standard imposed on the plaintiff in other dispositive motions, such as Rule 56 motions for summary judgment. *Id*. ¶¶ 33, 36; *see Curtis v. Porter*, 2001 ME 158, ¶¶ 8-9, 784 A.2d 18 (detailing the standard afforded the nonmoving party facing summary judgment).

> [The standard] requires proof only of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor. Prima facie evidence requires only some evidence on every element of proof necessary to obtain the desired remedy. Thus, prima facie proof is a low standard that does not depend on the reliability or credibility of the evidence . . . .

*Nader I*, 2012 ME 57, ¶ 34, 41 A.3d 551.

[¶14]  Four years later, in *Gaudette I*, we added a third step and imposed a greater burden upon the plaintiff/nonmoving party.  Not only was the plaintiff/nonmoving party required to present prima facie evidence in the second step, but, if the record revealed a dispute regarding material facts, then the plaintiff/nonmoving party was required, in the newly created third-step, to convince the trial court by a preponderance of evidence that the assertions

articulated in the second step were in fact true.  *See Gaudette I*, 2017 ME 86,

¶¶ 18-21, 160 A.3d 1190.  We said:

> We now hold, however, contrary to what we indicated in *Nader I*,
> . . . that if the plaintiff[/moving party] meets [in the second step]
> this prima facie burden for any or all of the defendant[/nonmoving
> party's] petitioning activities, the special motion to dismiss is not
> then automatically denied.  Rather, . . . on motion by either party,
> (1) the court permits the parties to undertake a brief period of
> limited discovery, the terms of which are determined by the court
> after a case management hearing, and (2) at the conclusion of that
> limited discovery period, the court conducts an evidentiary
> hearing.  At the evidentiary hearing, it is the plaintiff's burden to
> establish, by a *preponderance of the evidence*, each of the elements
> for opposing the dismissal on anti-SLAPP grounds for which he
> successfully made out his prima facie case—that the defendant's
> petitioning activity was devoid of factual support or an arguable
> legal basis and that the petitioning activity caused the plaintiff
> actual injury.  If neither party requests discovery and/or the
> evidentiary hearing, however, the court shall decide whether the
> plaintiff has met this burden by a preponderance of the evidence
> based only on the parties' submissions in seeking and opposing the
> special motion to dismiss.

*Id.* ¶ 18 (emphasis added) (footnotes and citations omitted).

[¶15]  *Gaudette I* also made clear that the trial court was to make findings

of fact and that, on appeal, we would review any factual determination for clear

error, which is the standard of review generally applicable to findings of fact.

*Id.* ¶ 18 n.8.

[¶16]    Our jurisprudence has progressed from giving the

defendant/moving party all favorable inferences (*Morse Brothers*), to giving the

12

plaintiff/nonmoving party all favorable inferences in a prima facie standard (*Nader I*), to requiring the trial court to make a finding of fact by a preponderance of the evidence after holding an evidentiary hearing or reviewing the parties' submissions (*Gaudette I*).  *See Morse Brothers*, 2001 ME 70, ¶ 18, 772 A.2d 842; *Nader I*, 2012 ME 57, ¶¶ 30-33, 41 A.3d 551; *Gaudette I*, 2017 ME 86, ¶ 18, 160 A.3d 1190.  Under *Gaudette I*, if the court reached the third step, the plaintiff/nonmoving party bore the burden of convincing the court by a preponderance of the evidence that the defendant/moving party's petitioning activities were devoid of factual support and that the plaintiff/nonmoving party suffered an actual injury.  2017 ME 86, ¶ 18, 160 A.3d 1190.

[¶17]   As the United States Court of Appeals for the First Circuit previously noted in *Godin v. Schencks*, 629 F.3d 79, 90 n.18 (1st Cir. 2010)*,* a fact-finding step like the one we adopted in *Gaudette I* could implicate a citizen's right to a jury trial under article I, section 20 of the Maine Constitution.  The First Circuit noted that article I, section 20 of the Maine Constitution is an analogue to the Seventh Amendment and stated,

> There may be a concern that Section 556, to the extent it might be read to allow . . . a judge to resolve a disputed material fact, would then preclude a party from exercising its Seventh Amendment rights to trial by jury on disputed issues of material fact.

*Id.*

[¶18]  Many other courts have recognized and addressed the problems with "fact-finding" within anti-SLAPP cases.[5]  The Washington Supreme Court held that its state's anti-SLAPP statute, which required a trial court to make factual determinations involving the merits of a litigant's claim, without a trial violated the right to trial by jury and was therefore invalid.  *Davis*, 351 P.3d at

---

[5]  Other states have statutes that use different standards to be applied when reviewing a motion brought under their respective anti-SLAPP statutes.  Like Maine, some states—Oklahoma, Tennessee, and Texas—use "prima facie" evidence.  *See* Okla. Stat. tit. 12, § 1434 (LEXIS through the 2021 First Reg. Sess. of the 58th Leg.); Tenn. Code Ann. § 20-17-105 (LEXIS through the 2021 First Extraordinary and the 2021 Reg. Sess.); Tex. Civ. Prac. & Rem. Code § 27.005 (LEXIS through the 2021 Reg. Sess. of the 87th leg., 2021 1st, 2nd, & 3rd Called Sess.).  Other jurisdictions—Louisiana, California, the District of Columbia, Kansas, Oregon, Georgia, New York, and Colorado—use other terms to indicate the same standard.  *See, e.g.*, *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) (Using a "probability of success [standard where] a non-movant's burden in opposing [an anti-SLAPP motion] is the same as that of a non-movant opposing summary judgment . . . ."); *Healthsmart Pac., Inc. v. Kabateck*, 212 Cal. Rptr. 3d 589, 599 (Cal. Ct. App. 2016) ("[T]he plaintiff then has the burden to demonstrate a probability of prevailing on the claim . . . [and] [t]he court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (quotation marks omitted)); *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1234 (D.C. 2016) ("likelihood of success"); *Doe v. Kan. State Univ.*, 2021 Kan. App. LEXIS 48, at *16 (Kan. Ct. App. 2021) ("likelihood of prevailing on their claim by presenting competent evidence to support a prima facie case"); *Page v. Parsons*, 277 P.3d 609, 612, 619 (Or. Ct. App. 2012) ("probability that the plaintiff will prevail" based on "prima facie showing of fact that would, if proved, support a judgment in the plaintiff's favor." (quotation marks omitted)); *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 830 S.E.2d 119, 125, 127 (Ga. 2019) (providing the same standard, "likelihood of success," and stating that the claim must be "supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (quotation marks omitted)); N.Y.C.P.L.R. § 3212(h) (Consol. 2021) (Current through 2021 released Chs. 1-522) (providing that, within New York's summary judgment laws, the nonmoving party must demonstrate "that the action, claim, cross or counterclaim has a substantial basis in fact and law."); *Stevens v. Mulay*, No. 19-cv-01675-REB-KLM, 2021 U.S. Dist. LEXIS 57594, at *7, *9 (D. Colo. Mar. 26, 2021) ("reasonable likelihood" but with a "summary judgment-like standard" where the court "must accept as true evidence favorable to [the plaintiff]" (alteration and quotation marks omitted)).  What these decisions all have in common is that when there are disputed facts, the nonmoving party is given all favorable inferences.

864, 873-74; *see also Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623, 636 (Minn. 2017) (holding Minnesota's anti-SLAPP statute unconstitutional). In an advisory opinion, the New Hampshire Supreme Court stated that a proposed anti-SLAPP law then being considered by the New Hampshire Legislature would be unconstitutional because it would deny a litigant the right to a jury trial on disputed issues of fact. The New Hampshire court said,

> Unlike [summary judgment motions] wherein the court does not resolve the merits of a disputed factual claim, the procedure in the proposed bill requires the trial court to do exactly that . . . [because] the trial court that hears the special motion to strike is required to weigh the pleadings and the affidavits on both sides and adjudicate a factual dispute. Because a plaintiff otherwise entitled to a jury trial has a right to have all factual issues resolved by a jury . . . the procedure in the proposed bill violates part I, article 20 [of the New Hampshire Constitution].

*Opinion of the Justices*, 641 A.2d at 1015 (N.H. 1994) (citation omitted).

[¶19] Because we are now convinced that in our attempt to craft a process that would address the "gaps in direction regarding [the] application" of the statute, *Gaudette I*, 2017 ME 86, ¶ 5, 160 A.3d 1190, we have taken a step too far, and we now abandon the third step we adopted in *Gaudette I* and return to the framework we adopted in *Nader I* and restated in a per curiam decision in *Nader II*: the special motion to dismiss must be denied if the opposing party

presents "prima facie evidence that at least one of the moving party's petitioning activities was 'devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury to the [nonmoving party]." *Nader II*, 2013 ME 51, ¶ 14, 66 A.3d 571 (quoting *Nader I*, 2012 ME 57, ¶¶ 33, 36, 41 A.3d 551).

[¶20]  The dissent is not incorrect in stating that portions of the language in section 556 are indicative of an adjudicatory process that requires the trial court to resolve disputes of fact.  *See* Dissenting Opinion ¶¶ 35, 39-40.  These are the same aspects of the statute that led us in *Gaudette I* to superimpose an adjudicatory third step, which we now abandon.  We have a duty to interpret a statute in a way that preserves its constitutionality if that can be done reasonably.  *See Nader I*, 2012 ME 57, ¶ 19, 41 A.3d 551; *Smith v. Hawthorne*, 2006 ME 19, ¶ 29, 892 A.2d 433.  To be constitutionally sound, section 556 cannot be read to infringe on a plaintiff's right to a jury trial—an infringement that we now recognize was the consequence of *Gaudette I*.  Particularly given the absence of legislative clarification of the statute despite our entreaties, in order to preserve the constitutionality of the statute, we must return to the framework we adopted in *Nader I*.  That framework stops short of calling upon

a trial court judge to find facts that could result in the dismissal of a claim as to which the plaintiff has the right to a trial by jury.

## C. Thurlow's claims

[¶21] Turning to the case before us, we consider the Nelsons' special motion to dismiss, remembering that "SLAPPs are by definition meritless suits." *Duracraft*, 691 N.E. 2d at 941 (citing Barker at 399).

### 1. Step One: Petitioning Activities

[¶22] We review de novo a ruling on a special motion to dismiss by performing the same two-step analysis required of the trial court. We begin by reviewing the Nelsons' affidavit that accompanied their special motion to dismiss to determine whether the Nelsons were engaged in petitioning activity as defined in section 556. *See Nader II*, 2013 ME 51, ¶ 12 n.9, 66 A.3d 571. At this step, the burden is on the Nelsons, as the defendants/moving parties, to establish that their activity constituted petitioning activity. *Gaudette I*, 2017 ME 86, ¶ 8, 160 A.3d 1190.

[¶23] The parties agree that the Nelsons sent the letter to public school officials who supervised Thurlow.[6] The basis of the letter was Thurlow's

---

[6] In his brief, Thurlow makes passing reference to the letters being shared with members of the community. We do not decide what effect this would have on whether the Nelsons' actions would constitute petitioning activity, because it was not properly raised or developed. *See Thurston v. Galvin*, 2014 ME 76, ¶ 5 n.1, 94 A.3d 16 (stating that an issue not raised on appeal is deemed waived);

conduct in his role as a public school assistant principal. Further, the letter was "reasonably likely to encourage consideration or review of an issue." 14 M.R.S. § 556.

[¶24] Particularly given the broad reach of section 556, *see Schelling v. Lindell*, 2008 ME 59, ¶ 13, 942 A.2d 1226, the Nelsons' activities fit the definition of petitioning activity.

### 2. Step Two: Devoid of Factual or Legal Support/Actual Injury

[¶25] Because the Nelsons met their burden at step one, we now move to step two to determine whether Thurlow has presented prima facie evidence that the letter was devoid of any factual support or any arguable basis in law and that it caused him actual injury. *Nader II*, 2013 ME 51, ¶ 12 n.9, 66 A.3d 571. As with the standard of review applicable to the step-one analysis, this is a de novo determination. *Id.*

[¶26] As to Thurlow's burden, the focus is not on what the Nelsons considered to be a reasonable factual support for their letter or their interpretation of the facts;[7] it is on whether the facts as presented by Thurlow,

---

*see also Dep't of Env't Prot. v. Woodman*, 1997 ME 164, ¶ 3 n.3, 697 A.2d 1295 ("It is well established that pro se litigants are held to the same standards as represented parties.").

[7] The Nelsons' understanding of the facts could affect a good-faith analysis should they successfully assert a conditional privilege as to the underlying defamation claim. *See Morgan v. Kooistra*, 2008 ME 26, ¶¶ 31-38, 941 A.2d 447. Maine's anti-SLAPP statute is a procedural mechanism to screen meritless cases and does not change common law regarding the underlying

18

if believed, would prove that the Nelsons' allegations are devoid of any reasonable factual support or have no arguable basis in the law.[8]  As we said in *Gaudette I*,

> the plaintiff need[s] only to meet this burden as to any *one* of the petitioning activities at issue, and [is] not obligated to establish prima facie evidence that all of the defendant's petitioning activities were devoid of a factual or reasonable basis and caused actual injury.

2017 ME 86, ¶ 12, 160 A.3d 1190.

[¶27]  Thurlow's detailed affidavit, in conjunction with his complaint, did not present simply a general denial of the Nelsons' allegations.  His affidavit provided details as to why the allegations were devoid of any reasonable factual support.  Contrary to the dissent's characterization that the Nelsons' letter was essentially a complaint about how Thurlow handled their son's case and that Thurlow did not controvert most of the facts that the Nelsons presented, Dissenting Opinion ¶¶ 51-53, Thurlow's affidavit contains specific denials countering the Nelsons' allegations of wrongdoing.  In the affidavit, Thurlow

---

claim of defamation.  Legislatures are deemed to enact legislation against the backdrop of the common law and do not displace it without directly addressing the issue.  *See United States v. Texas*, 507 U.S. 529, 534 (1993); *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 10*, 847 A.2d 1169. Neither the legislative history nor the plain language of section 566 manifests an intention to deprive litigants of common law causes of action simply because the defamation was committed in the context of petitioning activity.

[8] Prima facie evidence is not determined by comparing the facts as presented by each side; all favorable inferences must be given to the plaintiff/nonmoving party in a special motion brought pursuant to the anti-SLAPP statute.  *Nader I*, 2012 ME 57, ¶ 33, 41 A.3d 551.

denied bullying, intimidating, or hurting the Nelsons' son or discouraging the Nelsons' advocacy in violation of their First Amendment rights. He also denied destroying school records and covering up school wrongdoing. He referenced his background and experience to refute the Nelsons' allegations that he was unfit to hold his position.

[¶28] These specific assertions of facts by Thurlow, including his reference to his exoneration following an investigation of the allegations contained in the Nelsons' letter, constitute prima facie evidence that the Nelsons' letter was devoid of any reasonable factual support. Thurlow has to meet his prima facie burden to only one of the petitioning activities at issue, and "was not obligated to establish prima facie evidence that all of the defendant's petitioning activities were devoid of a factual or reasonable basis." *Gaudette I*, 2017 ME 86, ¶ 12, 160 A.3d 1190.

[¶29] The remaining question is whether Thurlow presented prima facie evidence that he suffered an actual injury. In his affidavit, Thurlow states that as a result of the Nelsons' allegations he suffered an injury that caused him to seek medical, psychological, and psychiatric treatment; he has not been able to return to work or renew his credentials; and he has lost income.

[¶30] These allegations meet the standard we enunciated in *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 14, 143 A.3d 788. There, we explained that the plaintiff/nonmoving party presented prima facie evidence of an actual injury because she was alleging more than "purely emotional or psychic harm" and that, although the plaintiff/nonmoving party did not present an itemized bill, her claim was for an amount that was more than "mere guess or conjecture." *Id.* ("Given that it would be a simple matter to calculate the monetary loss of a few weeks of work and the cost of an increase in insulin dosage, speculation about damages is not necessary." (footnote omitted)). Here, Thurlow's assertions of lost employment and credentials are sufficient to meet his prima facie burden on the element of actual injury.

[¶31] Because Thurlow presented prima facie evidence of the two elements that comprise the second step, the Nelsons' special motion to dismiss must be denied.

### III. CONCLUSION

[¶32] The Nelsons met their burden at step one by demonstrating that their actions were petitioning activities in accordance with section 556. However, we vacate the order granting the Nelsons' special motion to dismiss because Thurlow met his burden of presenting prima facie evidence of the two

elements in the second step. We therefore remand to the trial court to deny the Nelsons' special motion to dismiss and for the case to proceed accordingly.

The entry is:

> Judgment vacated. Remanded for entry of an order denying the special motion to dismiss.

---

HORTON, J., dissenting.

[¶33] For the fourth time, the Court is altering the burden of persuasion at the second step of the procedure for anti-SLAPP special motions to dismiss. The burden that the Court's opinion adopts today is one we once endorsed, *see Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 33, 41 A.3d 551, but then rejected because we recognized that it "results in a pronounced dilution of the Legislature's apparent objective in enacting the anti-SLAPP statute." *Gaudette v. Davis* (*Gaudette I*), 2017 ME 86, ¶ 14, 160 A.3d 1190. Today the Court again dilutes the protection that the anti-SLAPP statute confers upon the right to petition for redress of grievances and does so in the name of protecting the right to a jury trial. I respectfully dissent. We need not take a zero-sum approach to balancing different constitutional rights and should instead find a way to reconcile them.

22

**A.    The prima facie standard that the Court adopts is inconsistent with the statute.**

[¶34]   The Court's formulation of the burden that a party opposing a special motion to dismiss must meet is contrary to the statute in two material respects.  First, the statute unmistakably requires the nonmoving party to make a showing of actual injury and lack of support for the petitioning activity by a preponderance of evidence, as we decided in *Gaudette I*, 2017 ME 86, ¶ 18, 160 A.3d 1190, not by prima facie proof as the Court decides today, Court's Opinion ¶ 19.   Second, the Court errs by requiring that the party with the burden of persuasion on a special motion to dismiss be given "all favorable inferences."   Court's Opinion ¶ 26 n.8.   The effect of the requirement is to reallocate the burden on the motion in a manner contrary to the statute.

[¶35]   The statute says that the party opposing a special motion to dismiss must "show[] that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party." 14 M.R.S. § 556 (2021).  In *Gaudette I*, we decided that these words meant that the nonmoving party on a special motion to dismiss had to prove these elements by a preponderance of the evidence.   2017 ME 86, ¶ 18, 160 A.3d 1190.  We also noted that the prima facie standard could determine

whether an evidentiary hearing on the special motion to dismiss was necessary, but not that it would govern the court's decision whether to grant or deny the special motion. *See id.*

[¶36] We said in *Gaudette I* that if the moving party's proffered factual support for its petitioning activity is disputed, the court could allow discovery, as specifically permitted by the statute, and should convene an evidentiary hearing for the court to determine "whether the plaintiff establishes, by a preponderance of the evidence, the two elements required by section 556." *Id.* ¶¶ 18, 21; *see* 14 M.R.S. § 556 ("[T]he court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted.").

[¶37] Today the Court eliminates the evidentiary hearing step and reverts to the prima facie standard that we said "results in a pronounced dilution of the Legislature's apparent objective." *Gaudette I*, 2017 ME 86, ¶ 14, 160 A.3d 1190. In contrast to proof by a preponderance of the evidence, "prima facie proof is a low standard that does not depend on the reliability or credibility of the evidence." *Nader I*, 2012 ME 57, ¶ 34, 41 A.3d 551 (quoting *Cookson v. State*, 2011 ME 53, ¶ 8, 17 A.3d 1208).

[¶38] The Court today points out that, in determining whether the nonmoving party has met its prima facie burden, the focus is on only the

24

nonmoving party's submittal. *See* Court's Opinion ¶ 26 ("As to Thurlow's burden, the focus is not on what the Nelsons considered to be a reasonable factual support for their letter or their interpretation of the facts . . . ."); *id.* ¶ 26 n.8 ("Prima facie evidence is not determined by comparing the facts as presented by each side . . . .").[9]

[¶39] The statute is specific to the contrary: "In making its determination [whether to grant or deny the special motion to dismiss], the court *shall consider* the pleading and *supporting and opposing affidavits* stating the facts upon which the liability or defense is based."[10]  14 M.R.S. § 556 (emphasis

---

[9]  A prima facie showing is indeed often determined on the face of the document purporting to make the showing.  *See Hann v. Merrill*, 305 A.2d 545, 553 (Me. 1972) (defining prima facie evidence as "[e]vidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient" (quoting Black's Law Dictionary 1353 (4th ed. 1951))).

What is different here is that the nonmovant's prima facie showing is directed to negating the factual or legal support that the moving party claims for its petitioning activity.  As a practical matter, the Court's opinion does not explain how the trial court can determine whether the nonmoving party has made a prima facie showing without looking to see what factual support the moving party has proffered to justify its petitioning activity.  But the problem presented by the Court's prima facie formulation is more than a practical one; it also contradicts the explicit terms of the statute.

[10]  The Court's opinion states that, "[l]ike Maine, some states—Oklahoma, Tennessee, Texas—use 'prima facie evidence.'"  Court's Opinion ¶ 18 n.5.  *Unlike* Maine's statute, however, the anti-SLAPP statute in each of these states explicitly provides that the nonmoving party need establish only a prima facie case for each element of its claim.  *Compare* Okla. Stat. tit. 12 § 1434(C) (LEXIS through the 2021 First Reg. Sess. of the 58th Leg.) ("The court shall not dismiss a legal action under this section if the party filing the legal action establishes by clear and specific evidence a *prima facie case* for each essential element of the claim in question." (emphasis added)), Tenn. Code Ann. § 20-17-105(b) (LEXIS through the 2021 First Extraordinary and the 2021 Reg. Sess.) ("If the petitioning party meets [its] burden, the court shall dismiss the legal action unless the responding party establishes a *prima facie case* for each essential element of the claim in the legal action." (emphasis added)), *and* Tex. Civ. Prac. & Rem. Code § 27.005(c) (LEXIS through the 2021 Reg. Sess.

added). The statute requires the trial court, in deciding a special motion to dismiss, to do precisely what the Court's opinion today says the trial court must not do—"compar[e] the facts as presented by each side." *See* Court's Opinion ¶ 26 n.8.

[¶40] The statute thus expressly and conclusively refutes the notion that a special motion to dismiss is decided by only a prima facie standard involving consideration of only the nonmoving party's affidavits. *See* 14 M.R.S. § 556. It specifically requires the court to weigh the nonmoving party's factual assertions against the moving party's factual assertions in determining whether the nonmoving party has made a showing of actual injury and absence of factual or legal support for the moving party's petitioning activity. *See id.*

[¶41] The Court also errs in requiring that "all favorable inferences must be given" to the nonmoving party on a special motion to dismiss. *See* Court's Opinion ¶ 26 n.8 ("[A]ll favorable inferences must be given to the plaintiff/nonmoving party in a special motion brought pursuant to the anti-SLAPP statute."). The "all favorable inferences" reference is borrowed

---

of the 87th leg., 2021 1st, 2nd, & 3rd Called Sess.) ("The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a *prima facie case* for each essential element of the claim in question." (emphasis added)), *with* 14 M.R.S. § 556 (2021).

from the context of motions for summary judgment in which the moving party must show that summary judgment should be granted. *See* M.R. Civ. P. 56(c); *Bailey v. Gulliver*, 583 A.2d 699, 700 (Me. 1990) ("The law is well settled that a party moving for summary judgment has the burden of establishing there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law."); *Angell v. Hallee*, 2014 ME 72, ¶ 17, 92 A.3d 1154 ("The nonmoving party is given the full benefit of all favorable inferences that may be drawn from the facts presented." (quotation marks omitted)). It therefore is logical for the nonmoving party's summary judgment affidavit to be viewed in the light most favorable to the nonmoving party.

[¶42] On the other hand, there is no rationale for giving "all favorable inferences" to the nonmoving party at the second step of the analysis of an anti-SLAPP special motion to dismiss. The Court's opinion acknowledges that after the moving party has met its initial burden on its special motion to dismiss, the burden shifts to the nonmoving party. *See* Court's Opinion ¶ 12. Yet, the Court's opinion effectively contravenes the statutory allocation of the burden by requiring that the nonmoving party be given "all favorable inferences" at the second step. *Id.* ¶ 26 n.8.

[¶43]  The Legislature intended the anti-SLAPP statute to act as a barrier to prevent people from being sued for exercising their constitutional right of petition unless their petitioning activity is shown more likely than not to have caused actual injury and be devoid of factual or legal support.  *See Gaudette I*, 2017 ME 86, ¶ 15, 160 A.3d 1190 ("By [the] plain language [of section 556], the Legislature has demonstrated its intention to grant strong protection to petitioning activity . . . .").[11]  Requiring only the low prima facie standard, with "all favorable inferences" given to the nonmoving party, converts the barrier into a speed bump.

**B.    The Court can protect the right to a jury trial without diluting the statute's protection for petitioning activity.**

[¶44]  The Court's decision to revise the statute in the name of protecting the right to a jury trial implicitly assumes that disputed factual issues triable to

---

[11]  The statute provides "strong protection" for petitioning activity by imposing a burden of persuasion upon the plaintiff (typically the nonmoving party on a special motion to dismiss) that is different, and in some respects broader, than the burden that would apply absent the statute. *Gaudette v. Davis* (*Gaudette I*), 2017 ME 86, ¶ 15, 160 A.3d 1190.  Our precedent does not support the Court's statement that the anti-SLAPP statute "does not change common law regarding the underlying claim of defamation."  Court's Opinion at ¶ 26 n.7.  *See Schelling v. Lindell*, 2008 ME 59, ¶ 27, 942 A.2d 1226 ("[T]he common law doctrines associated with libel and slander are not available when the anti-SLAPP statute applies . . . .").  For example, in this case Thurlow must prove "actual injury" under the anti-SLAPP statute, but the plaintiff in a defamation case need not prove special damages if the defamatory statement relates to the plaintiff's business or profession. *See Haworth v. Feigon*, 623 A.2d 150, 158-59 (Me. 1993).

a jury will arise in connection with every special motion to dismiss. As this case illustrates, that assumption is unwarranted.

[¶45] Given the "devoid of any reasonable factual support" standard that the nonmoving party must meet in opposing a special motion to dismiss, it is not enough for the nonmoving party to generate a dispute as to some facts if enough other facts that support the moving party's petitioning activity are undisputed. *See* 14 M.R.S. § 556. In other words, the factual dispute must be sufficient in scope to call into question the existence of "any reasonable factual support" for the petitioning activity, such that a reasonable fact finder could decide either way the question of whether the nonmoving party had met its burden. *See id.* Only then would an evidentiary hearing be necessary and only then would the right to a jury trial be triggered.

[¶46] The second-step procedure that would comport with the statute would be for the trial court to review and compare the affidavits submitted in support of and in opposition to the special motion to dismiss in a manner similar to how it reviews summary judgment affidavits, but without giving any party the benefit of "all favorable inferences." *See Morse Brothers, Inc. v. Webster*, 2001 ME 70, ¶ 17, 772 A.2d 842 ("Because the special motion [to dismiss] requires the consideration of both pleadings and affidavits, the

standard of review should resemble the standard for reviewing a motion for summary judgment."). The purpose of the comparison at this stage is to determine whether a reasonable fact finder could decide that the nonmoving party more likely than not incurred actual injury as a result of the moving party's petitioning activity and that the petitioning activity more likely than not was devoid of any reasonable factual support or legal basis.

[¶47] For the reasons set forth below, *see infra* ¶¶ 51-54, I conclude that in this case Thurlow has failed to show that a reasonable fact finder could find that the Nelsons' petitioning activity was devoid of any reasonable factual support. I therefore would affirm the trial court's grant of the Nelsons' special motion to dismiss. If I had concluded otherwise, I would support vacating the dismissal and remanding the case, but with one critical departure from the Court's opinion. Instead of dismantling *Gaudette I* by lowering the nonmoving party's burden of persuasion and eliminating the evidentiary hearing from the procedure in every instance, as the Court does today, I would accommodate the right to a jury trial in the limited instances when it actually arises.

[¶48] Instead of remanding with instructions to deny the special motion to dismiss, I would remand for an evidentiary hearing on the Nelsons' special motion to dismiss. If any party wished to have a jury, the court in its discretion

could decide whether to convene the hearing immediately or to defer it and allow the case to proceed in the meantime without acting on the special motion to dismiss.

[¶49] The two obvious timeframes for the evidentiary hearing—before the case proceeds to its merits or after—both have their advantages and drawbacks if a jury is needed. Plainly, by saying that a special motion to dismiss may be filed early in the case and imposing a general stay on discovery once the motion is filed, the statute contemplates that a special motion to dismiss will be decided before a case proceeds to its merits. *See* 14 M.R.S. § 556 ("The special motion to dismiss may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms the court determines proper."). On the other hand, convening a jury at the evidentiary hearing on the special motion to dismiss could mean that two juries are convened at different stages of a case if it goes forward and is later tried before a jury.

[¶50] But nothing in the statute bars the same jury that ultimately decides the case from also rendering an verdict on factual issues generated in the parties' filings on a special motion to dismiss. Nothing in the statute requires that a special motion to dismiss be decided at any particular point in the case. In fact, the statute permits a special motion to dismiss to be filed at

any time during the case, with leave of court. *See id.* Obviously, for the trial court to take a special motion to dismiss under advisement while the case proceeds would not advance the objective of the anti-SLAPP statute to secure "the swift dismissal of such lawsuits early in the litigation as a safeguard on the defendant's First Amendment right to petition." *Gaudette I*, 2017 ME 86, ¶ 4, 160 A.3d 1190. However, the maxim "better late than never" applies fully here. Delaying the resolution of a special motion to dismiss until a trial on the merits does less damage to the statute's "strong protection" for petitioning activity than a "pronounced dilution" that is contrary to the requirements of the statute. *See id.* ¶¶ 14-15.

**C.      The trial court's decision in this case should be affirmed because Thurlow has not shown that a reasonable fact finder could decide that the Nelsons' petitioning activity was devoid of any reasonable factual support.**

[¶51]   The Court's background recitation omits any reference to the factual support that the Nelsons claimed for their petitioning activity, which can be summarized as follows. The Nelsons' son, who has a neurological disability that renders him vulnerable, was struck, threatened, chased, cursed at, doused with water, and otherwise tormented on the playground and in the school bathroom by another student dozens of times over the course of the school year. As the assistant principal, Thurlow was tasked with handling the matter,

and the Nelsons repeatedly contacted him to enlist his help. In response, Thurlow showed the Nelsons' son the playground surveillance video depicting one of the incidents that the son had reported and then told the Nelsons that their son was not being bullied. Thurlow's response caused the son to feel intimidated for reporting what he was experiencing. Thurlow later refused to allow Zakia Nelson to see the video. When speaking with the Nelsons, Thurlow denied that bullying even existed at the school. Thurlow did essentially nothing to remedy the situation beyond proposing a plan that regulated only the Nelsons' son's own behavior and counseled him to try to avoid the other student.

[¶52] In deciding the special motion to dismiss, the trial court considered the submittals of both sides, in keeping with what used to be our interpretation of the statute. In its detailed analysis comparing the Nelsons' factual assertions with Thurlow's response, the trial court accurately noted that Thurlow did not controvert most of the facts that the Nelsons presented. Thurlow's essential point was that the Nelsons were refusing to recognize their son's own contribution to the situation.

[¶53] Accordingly, the trial court aptly observed that "[t]he allegations contained in the [Nelsons'] September 25, 2017 letter that Thurlow intimidated

the [Nelsons'] son is an interpretation of facts that actually happened . . . . Where the parties diverge is in their interpretation of these events[,] . . . but this difference of interpretation does not mean that the September 25, 2017 letter is completely devoid of any reasonable factual support." In other words, a reasonable fact finder could not find that the Nelsons' petitioning activity was devoid of any reasonable factual support. That, in turn, means that there is no issue for a fact finder to decide as to whether Thurlow met his second-step burden of persuasion.

[¶54] I would therefore affirm the trial court's grant of the special motion to dismiss because Thurlow failed to meet his burden to show that the Nelsons' petitioning activity was more likely than not devoid of any reasonable factual support.

---

John P. Thurlow, pro se, and Tyler Lauzon, Esq. (orally), Lauzon Law, LLC, Saco, for appellant John Thurlow

Eric J. Uhl, Esq. (orally), Richardson, Whitman, Large & Badger, Portland, for appellees Zakia C. Nelson and Ross Nelson

Lawrence C. Winger, Esq., Portland, for amicus curiae Lawrence C Winger

Sigmund D. Schutz, Esq., and Alexandra A. Harriman, Esq., Preti Flaherty Beliveau & Pachios LLP, Portland, for amici curiae Reporters Committee for Freedom of the Press and fourteen media organizations

34

Thomas L. Douglas, Esq., Douglas, McDaniel & Campo LLC, PA, Westbrook, for amicus curiae Maine Trial Lawyers Association

Aaron Frey, Attorney General, and Sarah E. Coleman, Asst. Atty. Gen, Office of the Attorney General, Augusta, for amicus curiae Attorney General of the State of Maine

Michelle R. King, Esq, and Jacqueline R Moss, Esq, Irwin & Morris, Portland, for amici curiae Pine Tree Legal Assistance, Inc., Maine Coalition to End Domestic Violence, Maine Coalition Against Sexual Assault, Michelle R. King, and Jacqueline R. Moss

Zachary L. Heiden, Esq., and Emma E. Bond, Esq, American Civil Liberties Union of Maine Foundation, Portland, and Jeffrey A. Thaler, Esq., Portland for amici curiae American Civil Liberties Union of Maine Foundation and Jeffrey A. Thaler

Cumberland County Superior Court docket number CV-2019-417
FOR CLERK REFERENCE ONLY