STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CV-2022-00056
PENSC-CIV-2022-00056

Hermon School Department,

      Plaintiff

  v.

Shawn McBreairty,

      Defendant.

**ORDER DENYING SPECIAL**
**MOTION TO DISMISS**

## Introduction

Plaintiff Hermon School Department (HSD) became concerned about certain statements Defendant Shawn McBreairty made about one of HSD's employees, teacher Mallory Cook. It responded with a civil action by which it seeks a declaration that McBreairty's statements constituted bullying, harassing, and hazing behavior in violation of state law and policies of the Hermon School Board. It also seeks an injunction prohibiting Mr. McBreairty from issuing more of the same.

The matter presents several layers of complication. One is that the plaintiff is Ms. Cook's employer, which seeks to advance its own interest in acquiring and retaining employees, rather than Ms. Cook herself. Another is that HSD postures Mr. McBreairty's alleged actionable statements in the terms of a school bullying policy, notwithstanding that Mr. McBreairty has no children in the school system, is not affiliated with it any capacity, and does not even live in Hermon. Another is that, although Mr. McBreairty unmistakably disapproves of Ms. Cook's activities, some of his criticisms are couched in such awkward terms it is difficult to articulate the precise substance of his disdain (in several contexts, he accuses Ms. Clark of "pushing" various subject matters rather than, e.g., promoting a point of view, approving of an attitude, or encouraging a specific action). Yet another is that HSD seeks the Constitutionally disfavored remedy of enjoining Mr. McBreairty from speaking

1

rather than holding him to account after he has spoken. A further, threshold layer of consideration is the one Mr. McBreairty now presents to the Court: a special motion to dismiss pursuant to 14 M.R.S. § 556, the anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) law.

In their thorough memoranda and illuminating oral arguments, for which the Court thanks them, counsel ranged deep into the substance of the case. The Court's focus at this early stage, however, must be limited to the motion now before it: whether Mr. McBreairty is entitled to immediate relief under the anti-SLAPP law.

The Court recognized at oral argument that the resolution of the pending motion has been delayed for reasons unrelated to the parties. They are entitled under the anti-SLAPP law to a prompt resolution of this special motion and the Court acknowledges their patience in awaiting it.

## Anti-SLAPP Law and Standards for Special Motion to Dismiss

SLAPP is an acronym for Strategic Lawsuits Against Public Participation, which are lawsuits filed with the goal of stopping citizens from exercising their political rights or punishing them for having done so. *See Thurlow v. Nelson*, 2021 ME 58, ¶ 8, 263 A.3d 494 (quoting George W. Pring, *SLAPPs: Strategic Lawsuits Against Public* Participation, 7 Pace Env't L. Rev. 3, 5-6 (1989)). Anti-SLAPP laws have been enacted in many states to protect the rights of individuals to petition the government and serve "to provide a means for the swift dismissal of such lawsuits early in the litigation as a safeguard for the defendant's First Amendment right to petition." *See Thurlow*, 2021 ME 58, ¶ 8, 263 A.3d 494; *Gaudette v. Davis*, 2017 ME 86, ¶ 4, 160 A.3d 1190. Enacted in 1995, Maine's anti-SLAPP law, 14 M.R.S. § 556 (2022), has frequently been the subject of Law Court decisions which have sought to balance the conflicting constitutional interests of the right to access the courts and the right to petition the government. *Thurlow*, 2021 ME 58, ¶¶ 9-11, 263 A.3d 494 (summarizing the development of Maine's anti-SLAPP caselaw and the Law Court's changing standard on how to evaluate anti-SLAPP special motions to dismiss); *see also Gaudette*, 2017 ME 86, ¶ 22 n.9, 160 A.3d 1190 ("Our

2

shifting interpretations of the anti-SLAPP statute reflect our continuing struggle with the sweeping breadth of the statute, particularly when compared to the anti-SLAPP statutes of other states.").

In *Thurlow*, the latest substantive judicial refashioning of the multi-step process applicable to the consideration of anti-SLAPP motions, the Law Court recast the procedure as follows:

> First, the defendant must file a special motion to dismiss and establish, based on the pleadings and affidavits, that the claims against him are based on his exercise of the right to petition pursuant to the federal or state constitutions. [Second, i]f the defendant meets the burden of establishing that the claims are based on petitioning activity, the burden shifts to the plaintiff to establish, through the pleadings and affidavits, prima facie evidence that the defendant's petitioning activity was devoid of any reasonable factual support or any arguable basis in law *and* that the defendant's petitioning activity caused actual injury to the plaintiff. The plaintiff's failure to meet either portion of this burden requires that the court grant the special motion to dismiss with no further procedure.[1]

*Leighton v. Lowenberg*, 2023 ME 14, ¶ 32, 290 A.3d 68 (emphasis in original) (citing *Weinstein v. Old Orchard Beach Fam. Dentistry, LLC*, 2022 ME 16, ¶ 5, 271 A.3d 758). This is the procedure which applies to the instant motion.

## Mr. McBreairty's communications

Mr. McBreairty has made numerous communications about Ms. Cook which the Court now outlines. In April of 2022, in a Maine Freedom of Access Act public records request (FOAA) to the school superintendent, "Mr. McBreairty stated that Ms. Cook 'appears to be grooming children' and that she is attempting 'to co-parent the children of Hermon High School, while not concentrating on the very basics of education.'" (Pl.'s Compl. ¶¶ 30-31; Def.'s Mot. Dismiss 2.) HSD alleges that Mr. McBreairty circulated emails in early April of 2022, stating that "Ms. Cook was 'grooming children' and 'running a shadow organization by pushing hyper-sexualization of minors in the Gay Sexuality

---

[1] In *Thurlow*, the Law Court noted that this two-step formulation of the framework for consideration of an anti-SLAPP motion to dismiss was an overruling of their decision in *Gaudette*, which had added a third step to the consideration, and represented a return to the framework the Law Court previously adopted in *Nader v. Me. Democratic Party. See Thurlow*, 2021 ME 58, ¶ 19, 263 A.3d 494; *Gaudette*, 2017 ME 86, ¶ 5, 160 A.3d 1190, *Nader*, 2012 ME 57, ¶¶ 33, 36, 41 A.3d 551.

Alliance (GSA) club as faculty sponsor.'" (Pl.'s Compl. ¶ 44; Def.'s Mot. Dismiss 2.) Mr. McBreairty circulated further emails to school and Town of Hermon officials upon denial of his FOAA request on April 7, 2022. (McBreairty Decl. ¶ 6; Def.'s Mot. Dismiss 2-3.) Mr. McBreairty appeared on a radio show on February 16, 2022, and hosted a podcast on March 18, 2022, during both of which he spoke about Ms. Cook and what he believed to be occurring in the Hermon School Department. (Pl.'s Compl. ¶¶ 34, 38; Def.'s Mot. Dismiss 3.) On April 12, 2022, Mr. McBreairty posted a link to his podcast and a definition of "grooming" on his Facebook page. (Pl.'s Compl. ¶ 45; Def.'s Mot. Dismiss 3-4.) The complaint also alleges that Mr. McBreairty posted on Twitter on March 2, 2022, that Ms. Cook and other employees of the school were "groomers." (Pl.'s Compl. ¶ 46; Def.'s Mot. Dismiss 4.) Finally, it is undisputed that Mr. McBreairty did post on Twitter that Ms. Cook "has a 'secret' Twitter account, [and] is the head of a hyper-sexualization movement" (Pl.'s Compl. ¶ 39; Def.'s Mot. Dismiss 4.)

### Analysis

None of Mr. McBreairty's communications about Ms. Cook and her alleged activities ask for any relief: they do not request that Ms. Cook's employment be terminated, suggest the school department withdraw sponsorship from the student organization to which he objects, propose a change in curriculum, or otherwise advance any remedy to the deficiencies he perceives in the school department's conduct of public education. Both the tone and the specifics of his communications could support a conclusion that his single objective is to make Ms. Cook miserable. As Mr. McBreairty notes, however, the definition of "petitioning" under the anti-SLAPP law is broad, encompassing communications that only obliquely seek changes in actual policies or practices. *See, e.g., Schelling v. Lindell*, 2008 ME 59, ¶ 13, 942 A.2d 1226 (finding that a letter to the editor of a newspaper "arguably intended . . . to enlist public support" constituted petitioning under the anti-SLAPP statute and noting the breadth of the definition of petitioning in the statute). The Court therefore concludes for the

4

purpose of evaluating his special motion to dismiss that Mr. McBreairty was petitioning when he submitted his FOAA communications, spoke on the radio, and posted to social media.

In supporting his motion, Mr. McBreairty argues that all his disapproving communications were statements of opinion, similar to calling a person a racist, unfair, or unjust. The Court agrees with this analysis as it relates to Mr. McBreairty's characterization of Ms. Cook as "a leftist progressive who is an anti-Trumper." (Twitter post of March 10, 2022, reproduced Def.'s Mot. Dismiss 4.) Other statements cannot so easily be characterized as opinions.

Mr. McBreairty is alleged variously to have stated that Ms. Cook "appears to be grooming children," that she is a sexual predator, that she runs a "hyper-sexualization movement," and that she has a secret Twitter account. (Pl.'s Compl. ¶ 39; Def.'s Mot. Dismiss 4.) All these statements, alone and in context with one another, amount to an accusation of misconduct rather than a strongly stated disagreement about suitable teaching material for teenage students. Neither can they be saved from their defamatory implications, at least at this preliminary stage of the case, by Mr. McBreairty's posting of a definition of "grooming" on his Twitter account and his use of the word "appears." *See Ballard v. Wagner*, 2005 ME 86, ¶ 12, 877 A.2d 1083 ("[I]n assessing whether words are defamatory, they must be 'taken in their ordinary and usual meaning.'") (quoting *Judkins v. Buckland*, 149 Me. 59, 64 98 A.2d 538, 541 (1953)). His proposed definition of "grooming" is damning on its face and the posting does not necessarily retract any other implication Mr. McBreairty might have launched in his earlier communication; and the term "appearance" in the context of specific accusations of activity strongly suggests the appearance is supported by known but as-yet unrecounted facts. *See Ballard*, 2005 ME 86, ¶ 12, 877 A.2d 1083 ("A statement of opinion may be actionable if it implies the existence of undisclosed defamatory facts."); *Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991). The Court therefore concludes that at least elements of Mr. McBreairty's petitioning activity were factual statements without reasonable support.

5

Whether Mr. McBreairty has caused harm to the Hermon School Department rather than Ms. Cook alone is a closer call. She was the target of his campaign, and her affidavit recounts her personal responses to Mr. McBreairty's statements. The Department's response and supporting materials state that the venue in which Ms. Cook conducts the activities to which Mr. McBreairty objects had to be moved, not in response to his petition for a change in policy but in response to what is alleged to be a plausible sense of danger generated by his various communications. Without offering an opinion on the validity of any other allegation of harm to the School Department, the Court finds this allegation sufficient to preclude relief under the anti-SLAPP statute.

**Conclusion and Order**

Defendant has limited his request for relief to a dismissal under 14 M.R.S. § 556. He is not entitled to that relief. His motion must therefore be DENIED.

So ORDERED.

The Clerk may incorporate this Order upon the docket by reference, pursuant to M.R. Civ. P. 79(a).

Dated: May 16, 2023

Entered on the docket: 05/18/2023

The Hon. Bruce C. Mallonee
Justice, Maine Superior Court

6