MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2022 ME 16
Docket:        Yor-20-325
Argued:        November 4, 2021
Decided:       March 8, 2022

Panel:         STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.
Majority:      MEAD, GORMAN, HORTON, and CONNORS, JJ.
Dissent:       JABAR and HUMPHREY, JJ.
Dubitante:     STANFILL, C.J.

NEAL L. WEINSTEIN

v.

OLD ORCHARD BEACH FAMILY DENTISTRY, LLC, et al.

GORMAN, J.

[¶1]  Neal L. Weinstein appeals from a judgment of the Superior Court (York County, *Douglas, J.*) dismissing Weinstein's seven-count complaint against Old Orchard Beach Family Dentistry, LLC, and Marina Narowetz. Weinstein challenges the court's dismissal of portions of four of those counts based on the application of 14 M.R.S. § 556 (2021) and argues that the court erred by dismissing the remainder of his complaint pursuant to M.R. Civ. P. 12(b)(6).  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In 2020, Weinstein, an attorney, filed a complaint against Marina Narowetz, DDS, and her dental practice, Old Orchard Beach Family Dentistry,

2

LLC (collectively, Narowetz). Weinstein alleged that, in response to Narowetz's handling of Weinstein's request for the dental records of his client, he had filed a complaint against Narowetz with the Board of Dental Practice,[1] prompting Narowetz to file complaints against him with the Maine Board of Overseers of the Bar, the Massachusetts Board of Bar Overseers, and the United States Postal Service. Based on statements that Narowetz made in her written answer to and testimony before the Board of Dental Practice and in her complaints to the Boards of Overseers and the Postal Service, Weinstein alleged seven counts: (1) libel, (2) slander, (3) defamation, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) negligence, and (7) punitive damages.

[¶3] Narowetz moved to dismiss all counts of the complaint on two alternative grounds—first, that the counts were subject to dismissal pursuant to 14 M.R.S. § 556, Maine's statute prohibiting "Strategic Lawsuits Against Public Participation" (the anti-SLAPP statute), *Thurlow v. Nelson*, 2021 ME 58, ¶ 8, 263 A.3d 494, and, alternatively, that the counts failed to state claims,

---

[1] Narowetz appealed the resulting decision of the Dental Board—affirmed by the Superior Court, *see* M.R. Civ. P. 80C—in which the Dental Board found that Narowetz had engaged in unprofessional conduct. *Narowetz v. Bd. of Dental Prac.*, 2021 ME 46, ¶¶ 13-15, 259 A.3d 771. We vacated the Dental Board's decision and remanded the matter for further Dental Board proceedings. *Id.* ¶¶ 22, 34.

*see* M.R. Civ. P. 12(b)(6).  Applying the anti-SLAPP statute, the court dismissed those portions of Counts 1, 3, 4, and 5 that were based on Narowetz's statements to the Boards of Overseers and the Postal Service.  The court dismissed Count 2 and those portions of Counts 1, 3, 4, and 5 that were based on Narowetz's statements to the Dental Board on grounds of privilege.  Finally, the court dismissed Count 6 based on Weinstein's failure to allege a duty as a matter of law, and it dismissed Count 7 for the absence of any remaining underlying tort.  Weinstein appeals.

## II.  DISCUSSION

[¶4]  The anti-SLAPP statute, 14 M.R.S. § 556, is intended to provide for the swift and early dismissal of frivolous lawsuits that are meant to discourage the defendant's exercise of his or her First Amendment right to petition. *Hamilton v. Drummond Woodsum*, 2020 ME 8, ¶¶ 15, 17, 223 A.3d 904; *Desjardins v. Reynolds*, 2017 ME 99, ¶ 6, 162 A.3d 228.  To that end, the statute provides that "[w]hen a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss."  14 M.R.S. § 556.

[¶5]  Although we have recently refashioned the multi-step procedure that applies to the consideration and disposition of such special motions to dismiss, *Thurlow*, 2021 ME 58, ¶ 19, 263 A.3d 494, the initial steps—which were applied to the present matter—remain unchanged.  First, "the defendant must file a special motion to dismiss and establish, based on the pleadings and affidavits, that the claims against him are based on his exercise of the right to petition pursuant to the federal or state constitutions."  *Gaudette v. Davis* (*Gaudette I*), 2017 ME 86, ¶ 16, 160 A.3d 1190 (alterations and quotation marks omitted); *see Thurlow*, 2021 ME 58, ¶ 22, 263 A.3d 494.  If the defendant meets the burden of establishing that the claims are based on petitioning activity, the burden shifts to the plaintiff to establish, "through the pleadings and affidavits, prima facie evidence that the defendant's petitioning activity was devoid of any reasonable factual support or any arguable basis in law *and* that the defendant's petitioning activity caused actual injury to the plaintiff."  *Gaudette I*, 2017 ME 86, ¶ 17, 160 A.3d 1190 (quotation marks omitted); *see* 14 M.R.S. § 556; *Thurlow*, 2021 ME 58, ¶¶ 25-26, 263 A.3d 494.  The plaintiff's failure to meet either portion of this burden requires that the court grant the special motion to dismiss with no further procedure.  *Gaudette I*, 2017 ME 86, ¶ 17, 160 A.3d 1190.

[¶6]  Weinstein argues that the court erred by dismissing on anti-SLAPP grounds those portions of Counts 1, 3, 4, and 5 that relate to Narowetz's statements to the Maine and Massachusetts Boards of Overseers and to the Postal Service based on its conclusion that Weinstein failed to meet his prima facie burden of establishing actual injury.[2]  We review de novo the trial court's granting in part of Narowetz's special motion to dismiss as to these four counts. *See Gaudette v. Mainely Media, LLC* (*Gaudette II*), 2017 ME 87, ¶ 10, 160 A.3d 539.

[¶7]  Although section 556 does not define "actual injury," we have interpreted the term to mean "a reasonably certain monetary valuation of the injury suffered by the plaintiff."  *Desjardins*, 2017 ME 99, ¶ 14, 162 A.3d 228 (quotation marks omitted); *see Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 10, 847 A.2d 1169.  "Actual injury could include . . . quantifiable losses of money or other resources or identifiable special damages."  *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 38, 41 A.3d 551.  We do not require the plaintiff to provide an "actuarial analysis" of such damages, *Schelling v.*

---

[2]  Weinstein does not dispute the court's conclusion that Narowetz's complaints about Weinstein to two state agencies and one federal agency—the Boards of Overseers and the Postal Service—constituted petitioning activity within the meaning of the anti-SLAPP statute.  *See* 14 M.R.S. § 556 (2021) (defining petitioning activity to include "any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding").

6

*Lindell*, 2008 ME 59, ¶ 18, 942 A.2d 1226; damages may instead be determined based on "the exercise of judgment applied to facts in evidence" as long as those facts allow a calculation based on "reasonable, as distinguished from mathematical, certainty by the exercise of sound judgment." *Dairy Farm Leasing Co. v. Hartley*, 395 A.2d 1135, 1140-41 (Me. 1978) (quotation marks omitted) (stating that damages "must not be left to mere guess or conjecture" (quotation marks omitted)).

[¶8]  The existence of actual injury may be considered in this analysis only to the extent that the asserted injury was both alleged in the complaint and established on a prima facie basis in opposition to the special motion to dismiss. *Desjardins*, 2017 ME 99, ¶ 19, 162 A.3d 228 ("[B]oth parties must be limited in their anti-SLAPP filings to the universe of facts as actually alleged in the plaintiff's complaint."). In *Desjardins*, for example, we affirmed the trial court's conclusion that the plaintiff failed to establish actual injury in the form of an attorney's retainer fee when the plaintiff did not seek that fee as a portion of his damages until filing the opposition to the special motion to dismiss. *Id.* ¶¶ 15, 19, 21. In *Nader v. Maine Democratic Party* (*Nader II*), we concluded that the plaintiff had not met his prima facie burden when he referenced facts in his complaint but provided no evidence of those facts, either in documents

attached to the complaint or in opposition to the defendant's special motion to dismiss. 2013 ME 51, ¶¶ 7, 20, 66 A.3d 571; *see Desjardins*, 2017 ME 99, ¶ 19, 162 A.3d 228.

[¶9] The corresponding requirements for both the complaint and the opposition allow the plaintiff to meet his prima facie burden while also preventing him from "alleging a new form of harm for the first time solely in response to the special motion to dismiss," thereby "thwart[ing] the purpose of the anti-SLAPP statute by expanding the scope of the litigation that [the defendant] must defend against." *Desjardins*, 2017 ME 99, ¶ 19, 162 A.3d 228. In this way, among others, complaints challenged by an anti-SLAPP special motion to dismiss differ from other civil complaints because a complaint's notice pleading may be insufficient in the face of a special motion to dismiss. *See id.* ¶ 17. The forgiving nature of notice pleading requires a plaintiff to provide only "fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quotation marks omitted); *see* M.R. Civ. P. 8(a)(1).

[¶10] As we have noted, however, "[t]he special motion to dismiss procedure in anti-SLAPP matters is . . . a more precise mechanism" for which notice pleading is insufficient. *Desjardins*, 2017 ME 99, ¶ 17, 162 A.3d 228;

8

*see Maietta Constr., Inc.*, 2004 ME 53, ¶ 10, 847 A.2d 1169 (requiring "affirmative evidence of an injury"). This precision is mandated by the language of the anti-SLAPP statute, which requires that the opponent of a special motion to dismiss show "that the moving party's acts caused actual injury to [him]." 14 M.R.S. § 556. We recognize that a plaintiff may not always foresee that his complaint will be subject to such a special motion to dismiss, but a plaintiff who otherwise follows the edicts of notice pleading and is later required to defend against a special motion to dismiss may preserve his claim through the anti-SLAPP process by seeking to amend his complaint to allege actual injury with greater specificity, and such motions to amend should be liberally granted. *See Desjardins*, 2017 ME 99, ¶ 19 & n.4, 162 A.3d 228. The anti-SLAPP statute also permits a plaintiff to bolster the complaint's allegations of actual injury through affidavits, as Weinstein did in this case. *See Gaudette I*, 2017 ME 86, ¶ 17, 160 A.3d 1190; *Nader II*, 2013 ME 51, ¶¶ 19-20, 66 A.3d 571.

[¶11]  Here, the only form of injury that Weinstein both referenced in his complaint and provided evidence about in his affidavit opposing the special motion to dismiss was injury in the form of embarrassment, shame, humiliation, emotional distress, and harm to his reputation. Such "emotional injury" alone does not constitute actual injury for anti-SLAPP purposes,

however, "unless it is so severe that no reasonable person could be expected to endure it."[3]  *Schelling*, 2008 ME 59, ¶¶ 22, 25-26, 942 A.2d 1226 (quotation marks omitted); *see Desjardins*, 2017 ME 99, ¶¶ 16, 20, 162 A.3d 228.  "In most instances," such proof "will require expert testimony to establish that the plaintiff's emotional injury qualifies for a diagnosis such as shock, post-traumatic stress disorder, or some other recognized medical or psychological disease or disorder."  *Lyman v. Huber*, 2010 ME 139, ¶ 23, 10 A.3d 707; *see Desjardins*, 2017 ME 99, ¶ 21, 162 A.3d 228.  Weinstein has offered no evidence that responding to two ultimately unsuccessful professional complaints resulted in emotional distress so severe that no reasonable person could be expected to endure it.  *See Schelling*, 2008 ME 59, ¶ 25, 942 A.2d 1226 (noting that "hurt feelings . . . are not compensable"); *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶¶ 4-8, 26, 48 A.3d 774 (holding that property owners whose property was inadvertently foreclosed upon had not demonstrated compensable emotional distress).

---

[3]  The types of emotional injury that Weinstein alleges are distinguished from emotional injury that in turn leads to quantifiable losses.  *See Thurlow v. Nelson*, 2021 ME 58, ¶¶ 29-30, 263 A.3d 494 (recognizing actual harm where the emotional injury resulted in monetary loss in the form of costs for "medical, psychological, and psychiatric treatment" and lost income brought about by the plaintiff's inability to work or renew his professional credentials).

10

[¶12]  Similarly, in claiming harm to his reputation, Weinstein has presented no evidence of actual injury or quantifiable loss.  At common law, defamation relating to the plaintiff's business or profession is actionable "per se" without any proof of damages because harm to reputation is presumed. *See Haworth v. Feigon*, 623 A.2d 150, 158-59 (Me. 1993).  However, "the [anti-SLAPP statute's] requirement that a plaintiff must demonstrate actual injury is not satisfied by the common law rule in libel cases that a plaintiff is not required to demonstrate that she has suffered any specific damages in order to recover on her claim." *Schelling*, 2008 ME 59, ¶ 18, 942 A.2d 1226.

[¶13]  Weinstein also asserts that he suffered damages in the form of lost billable hours resulting from the time that he and his paralegal spent in preparing responses to Narowetz's complaints to the Boards of Overseers.[4]

_____

[4] Weinstein purported to present other grounds of actual injury, but none was properly presented in opposing the special motion to dismiss for several reasons.  First, we do not consider statements of harm raised for the first time in Weinstein's memorandum in opposition to the motion to dismiss. *See Gaudette v. Davis* (*Gaudette I*), 2017 ME 86, ¶ 17, 160 A.3d 1190 (requiring a review of "the pleadings and affidavits" in evaluating an opposition to a special motion to dismiss); M.R. Civ. P. 7(a) (defining a "[p]leading[]" to include only a complaint, an answer, a disclosure under oath when trustee process is used, and a reply to a counterclaim).  Second, because the special motion to dismiss was granted only as to statements to the Boards of Overseers and the Postal Service, any harm that Weinstein alleged that he suffered as a result of Narowetz's statements to the Dental Board is irrelevant.  Third, to the extent that Weinstein seeks compensation for the embarrassment, shame, or emotional distress that his paralegal suffered, the paralegal is not a plaintiff in this matter, and Weinstein asserts no legal basis on which he is entitled to recover for any harm suffered by the paralegal.  Fourth, as a matter of law, Weinstein's allegation of defamation per se in his complaint cannot constitute actual injury within the meaning of section 556. *See Desjardins v. Reynolds*, 2017 ME 99, ¶ 14, 162 A.3d 228 ("The requirement of reasonable certainty also precludes the

Weinstein's presentation of evidence of actual injury in the form of lost billable hours is indistinguishable, however, from that unsuccessfully undertaken by the plaintiff in *Desjardins*. In *Desjardins*, the plaintiff had briefly mentioned in his complaint that he had retained counsel to investigate the defendant's statements, but the complaint otherwise "never purported to seek damages for that cost . . . or to otherwise suggest that his retention of counsel constituted any aspect of the damages he was seeking in the litigation." 2017 ME 99, ¶¶ 16, 19, 162 A.3d 228. Rather, the complaint alleged harm only in the form of emotional distress and reputational injury. *Id.* In opposition to the defendant's special motion to dismiss, the plaintiff alleged that his actual injury included a five-hundred-dollar expenditure for retaining the attorney. *Id.* ¶ 15. Because the attorney's retainer fee constituted "no part of [the plaintiff's] request for damages in his complaint," we rejected his attempt to provide in his opposition to the special motion to dismiss prima facie evidence of that fee. *Id.* ¶ 19.

[¶14] Likewise, in his complaint, Weinstein alleged only that "[t]he Plaintiff and his staff were forced to prepare a detailed response to the complaint against him, with the Massachusetts Board[] of Overseers of the

---

establishment of 'actual injury' when the plaintiff asserts only presumed damages ('damages per se'), as is associated with common law causes of action for libel or slander.").

Bar."[5] He did not suggest in his complaint that he suffered any loss *as a result of* that effort, nor did he allege that that time spent was a component of his damages claim. It was not until the opposition to the special motion to dismiss that Weinstein stated, for the first time, that he sought lost billable income as a portion of his damages.[6] Although lost income could constitute an actual injury for purposes of section 556, *see Gaudette I*, 2017 ME 86, ¶ 24, 160 A.3d 1190, Weinstein's failure to include lost income as a form of injury in his complaint, compounded by his failure to seek to amend his complaint to add such an allegation, precludes consideration of that alleged harm as an actual injury in this matter, *see Desjardins*, 2017 ME 99, ¶¶ 16, 19 & n.4, 162 A.3d 228.[7] In the

---

[5] Weinstein's single-page response to the Massachusetts Board was attached to Weinstein's complaint. Weinstein made no mention in his complaint of the time spent preparing a response to the Maine Board of Overseers or to the Postal Service.

[6] Weinstein attested in his affidavit, "My paralegal and I were both forced to take time away from my busy practice and lose valuable billable hours, prepare detailed responses to the complaints with the Boards of Overseers of the Bar, and appear in Augusta for the disciplinary hearing against Dr. Narowetz" and "I have lost numerous hours of billable time in defending myself to those Boards on her frivolous and unsupported claims."

[7] Even if Weinstein had alleged a loss of income in his complaint, the alleged loss likely would not constitute "actual injury" for purposes of section 556 because his claim is for the value of the time he spent defending himself against Narowetz's complaints rather than for a measurable loss resulting from Narowetz's alleged tortious conduct, such as the loss of a client's business. Attorneys who happen to be parties in litigation are not entitled to compensation for time spent defending themselves if a nonattorney party would not be entitled to compensation for such time. *See Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003); *see also In re Hannaford Bros. Customer Data Sec. Breach Litig.*, 2010 ME 93, ¶¶ 10-12, 4 A.3d 492 ("Our case law . . . does not recognize the expenditure of time and effort alone as a harm."); *M. N. Landau Stores, Inc. v. Daigle*, 157 Me. 253, 259-60, 170 A.2d 673 (1961) (affirming the trial court's determination that a plaintiff corporation was not entitled to reliance damages for time spent by corporate officers in negotiating a lease agreement breached by the defendant). If Weinstein had been representing the plaintiff in this case, as opposed to *being* the

absence of prima facie evidence of actual injury, the court correctly granted Narowetz's special motion to dismiss those portions of the complaint.

[¶15]   Weinstein also challenges the court's dismissal of his claims regarding statements that Narowetz made to the Dental Board.  The Superior Court properly concluded that Narowetz's statements to the Dental Board were protected by the absolute privileges that preclude civil liability concerning relevant statements made in judicial and quasi-judicial pleadings, *see Dineen v. Daughan*, 381 A.2d 663, 664 (Me. 1978), and during judicial and quasi-judicial proceedings, *see Bradbury v. GMAC Mortg., LLC*, 2012 ME 131, ¶ 8, 58 A.3d 1054. *See also Hurley v. Towne*, 155 Me. 433, 436, 438-39, 156 A.2d 377 (1959); *LaPlante v. United Parcel Serv., Inc.*, 810 F. Supp. 19, 21 (D. Me. 1993); *Lyons v. Bd. of Dirs. of Sch. Admin. Dist. No. 43*, 503 A.2d 233, 236 (Me. 1986).  Although Weinstein contends that Narowetz's statements to the Dental Board went well beyond the bounds of relevance, Narowetz's statements, whether founded or not, were all relevant to Narowetz's view of Weinstein's actions, Weinstein's credibility, and Weinstein's motives for filing the complaint against her. Moreover, because the court properly dismissed Counts 1 through 6 of

---

plaintiff, his client's claim might be cognizable for purposes of an attorney fee award, but it is not cognizable for purposes of the required showing of "actual injury."  14 M.R.S. § 556.

Weinstein's complaint,[8] the dismissal of Count 7—seeking punitive damages—was also appropriate based on the lack of any remaining underlying tort. *See Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 19 n.3, 226 A.3d 227.

The entry is:

Judgment affirmed.

---

JABAR, J., with whom HUMPHREY, J., joins, dissenting.

[¶16] I respectfully dissent because the definition of "actual injury" we adopted in *Maietta Construction., Inc. v. Wainwright*, 2004 ME 53, ¶ 10, 847 A.2d 1169, and continue to follow is in derogation of our common-law definition of "actual injury" in defamation cases. We should revisit our holding in *Maietta* to align our definition of "actual injury" in the anti-SLAPP context with our common-law definition. The stated purpose of Maine's anti-SLAPP statute is to screen out meritless cases, yet the narrow definition we adopted in *Maietta* results in the dismissal of meritorious cases. If we were to apply the common-law definition of actual injury in defamation cases, Weinstein's case

---

[8] Weinstein does not challenge the dismissal of Count 6 or those portions of Counts 1, 4, or 5 that were based on Narowetz's statements to the Dental Board.

would survive Narowetz's special motion to dismiss and M.R. Civ. P. 12(b)(6) motion to dismiss.

## I.  DEFINITION OF "ACTUAL INJURY"

[¶17]  I believe that the trial court erred when it dismissed Counts 1, 3, 4, and 5, which contained claims based on complaints made to the Maine Board of Overseers of the Bar, the Massachusetts Board of Bar Overseers, and the United States Postal Service (USPS), for the reason that Weinstein failed to present prima facie evidence of actual injury.

### A.  Our Interpretation of "Actual Injury"

[¶18]   Maine's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, 14 M.R.S. § 556 (2021), enacted by the Maine Legislature in 1995, P.L. 1995, ch. 413, provides that the nonmoving party in a proceeding on a special motion to dismiss brought pursuant to the statute must prove that "the moving party's acts caused actual injury to the responding party."  The statute does not contain a definition for "actual injury," nor does the statute in any way indicate that the Legislature intended to change Maine's common law. *See id.*

[¶19]  The common-law definition of "actual injury" in defamation cases has always allowed for the recovery of damages without evidence of

out-of-pocket expenses. In *Gertz v. Robert Welch, Inc.*, a defamation case, the

United States Supreme Court said:

> We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

418 U.S. 323, 349-50 (1974).

[¶20] We have followed that approach in numerous cases. *See Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18 ("We have long allowed recovery for mental anguish and loss of enjoyment of life in most tort actions." (quotation marks omitted)); *Rippett v. Bemis*, 672 A.2d 82, 88 (Me. 1996) ("[Defamation] damages may include the elements of mental suffering, humiliation, embarrassment, effect on reputation and loss of social standing so far as they have been proved and may reasonably be presumed."); *Saunders v. VanPelt*, 497 A.2d 1121, 1126 (Me. 1985).

[¶21] The First Circuit Court of Appeals has provided its interpretation of damages recoverable in a defamation action under Maine's common law:

> The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of

> publication. *Gertz*, 418 U.S. at 349, 94 S. Ct. 2997. Maine adheres to these traditional rules of defamation law in certain contexts.
>
> Under Maine law, defamatory words relating to "profession, occupation or official station" are libelous *per se*. *See Saunders*, 497 A.2d at 1124. "When [defamation] *per se* is established, a plaintiff need not prove special damages or malice in order to recover a substantial award." *Marston v. Newavom*, 629 A.2d 587, 593 (Me. 1993). . . . General damages include "elements of mental suffering, humiliation, embarrassment, effect upon reputation and loss of social standing, so far as they . . . may reasonably be presumed." *Saunders*, 497 A.2d at 1126 (citing *McMullen v. Corkum*, 143 Me. 47, 54 A.2d 753, 756 (Me. 1947)).

*Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 203 (1st Cir. 2007) (last alternation in original).

[¶22] In its section on general damages, the Restatement (Second) of Torts provides that "[o]ne who is liable for defamatory communication is liable for the proved, actual harm caused to the reputation of the person defamed." Restatement (Second) of Torts § 621 (Am. L. Inst. 1977). The Reporter's Notes continue, stating that "'[a]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, and mental anguish and suffering.'" Restatement (Second) of Torts § 621 Reporter's Notes (quoting *Gertz*, 418 U.S. at 350).

[¶23]   We were not called upon to interpret the definition of "actual injury" in the anti-SLAPP statute until 2003, in *Maietta*.  The *Maietta* court did not adopt Maine's common-law definition of "actual injury" as applied to defamation cases.   Instead it changed the term "actual injury" to "actual damages" without any explanation.  *Maietta Constr., Inc.*, 2004 ME 53, ¶¶ 9-10, 847 A.2d 1169.  The *Maietta* court also held, without elaborating or pointing to any source of authority, that the definition of "actual injury" did not include the "certain categories of defamation" where damages are presumed.  *Id.* ¶ 9.  The *Maietta* court defined "actual injury" under the statute as actual damages requiring quantifiable damages.  *Id.* ¶ 10.  It supported this change to "actual damages" by citing *Dairy Farming Leasing Co. v. Hartley*, a case involving liquidated damages in a contract action which held that "[w]hen recovery may be had *only for actual damage sustained*[, however,] the record must contain evidence from which damage in a definite amount may be determined with reasonable certainty."  *Maietta Constr., Inc.*, 2004 ME 53, ¶ 10, 847 A.2d 1169 (second alteration in original) (quoting *Dairy Farm Leasing Co.*, 395 A.2d 1135, 1140 (Me. 1978)).  This is not the law of defamation.  *See Galarneau*, 504 F.3d at 203-04.

[¶24] In turn, *Dairy Farm Leasing* cited *McDougal v. Hunt*, 146 Me. 10, 14, 76 A.2d 857 (1950), a case involving a claim of unjust enrichment. *Dairy Farm Leasing Co.*, 395 A.2d at 1137, 1140-41. The premise for requiring actual damages in *McDougal* was specific to the law of unjust enrichment, where "[a]ctual or compensatory damages *are not to be presumed* but must be proved." 146 Me. at 13, 76 A.2d 857, 860 (emphasis added). This stands in stark contrast to "the traditional rules pertaining to actions for libel," where "the existence of injury *is presumed* from the fact of publication." *Galarneau*, 504 F.3d at 203 (emphasis added and quotation marks omitted); *see Saunders*, 497 A.2d at 1124-25.

[¶25] The damages in a contract action involving the enforceability of a liquidated damages clause and an unjust enrichment case have no relationship to the definition of "actual injury" in a defamation case. *Maietta* was the first time we defined "actual injury" under Maine's anti-SLAPP statute, and we erroneously relied upon cases that dealt with the term "actual damages" in the context of a liquidated damages case and an unjust enrichment case instead of following our common law to determine what constitutes "actual injury." The *Maietta* court did not explain why it did not follow our traditional definition of "actual injury" in defamation cases, nor did it discuss whether the Legislature,

in enacting the anti-SLAPP statute, made it clear that it was changing Maine's common-law definition of "actual injury."

[¶26] The Court here also quotes *Schelling v. Lindell*, 2008 ME 59, 942 A.2d 1226, acknowledging the change in common law, Court's Opinion ¶ 12, but does not discuss where in the statute or the legislative history the Legislature intended to change the common law.

[¶27] We have unswervingly followed the *Maietta* approach numerous times in subsequent cases interpreting "actual injury" under our anti-SLAPP statute. In *Schelling*, relying on the *Maietta* decision, we rejected the plaintiff's argument that the common-law doctrine associated with defamation cases, which allows for the presumption of damages, satisfies the anti-SLAPP's "actual injury" requirement. 2008 ME 59, ¶¶ 18-20, 942 A.2d 1226. The Court said:

> [T]he statutory requirement that a plaintiff must demonstrate actual injury is not satisfied by the common law rule in libel cases that a plaintiff is not required to demonstrate that she has suffered any specific damages in order to recover on her claim.
>
> . . . .
>
> This is not the first occasion on which we have explicitly held that the presumed 'damages per se' traditionally associated with libel or slander relating to one's trade or business do not satisfy the actual injury requirement of the statute. *See, e.g.*, *Maietta Constr., Inc.*, 2004 ME 53, ¶¶ 9, 10, 847 A.2d at 1173 at 1173-74.

*Schelling*, 2008 ME 59, ¶¶ 18-19, 942 A.2d 1226; *see also Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 13, 143 A.3d 788 (citing *Schelling* to define "actual injury" for the purposes of an anti-SLAPP motion to dismiss); *Desjardins v. Reynolds*, 2017 ME 99, ¶ 14, 162 A.3d 228 (citing to the *Schelling* and *Maietta* family of cases to distinguish "actual injury" in anti-SLAPP cases from "actual injury" in "common law causes of action").

[¶28]  We have held that the Legislature must be clear when it changes the common law.  *See Batchelder v. Realty Res. Hosp., LLC.*, 2007 ME 17, ¶ 23, 914 A.2d 1116 ("[W]e have long embraced the well-established rule of statutory construction that the common law is not to be changed by doubtful implication, be overturned except by clear and unambiguous language, and that a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or necessary implication." (quotation marks omitted)); *Ziegler v. Am. Maize-Prods. Co.*, 658 A.2d 219, 223 (Me. 1995) ("[L]egislative pronouncement[s] embodied in [a statute] alter[] common law only to the extent the Legislature has made that purpose clear.").

[¶29]  Requiring a litigant to prove a quantifiable loss to prove actual injury in response to a special motion to dismiss in a defamation case is in derogation of our common law.  In 2012, in a concurring opinion in *Nader v.*

*Maine Democratic Party* (*Nader I*), Justice Silver warned about the use of this procedural mechanism to substantively change our common law:

> Because of the way the statute has been misused with respect to its intended purpose, treating it as a substantive abrogation of common law claims has become very problematic; it serves to bar legitimate, valid claims that are brought in good faith, regardless of whether a plaintiff would be able to meet her burden on a motion to dismiss or for summary judgment. While the Legislature may have the *authority* to do so, there is no indication that it *intended* to do so.

2012 ME 57, ¶ 47, 41 A.3d 551 (Silver, J., concurring).

[¶30] As a result of changing the common-law definition of "actual injury," we are violating one of the guiding principles of anti-SLAPP law—to screen out "meritless" cases, a principle we have consistently restated. *See Thurlow v. Nelson*, 2021 ME 58, ¶ 9, 263 A.3d 494; *Hamilton v. Drummond Woodsum*, 2020 ME 8, ¶ 17, 223 A.3d 904; *Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 14, 202 A.3d 1189; *Desjardins*, 2017 ME 99, ¶ 6, 162 A.3d 228; *Bradbury v. City of Eastport*, 2013 ME 72, ¶ 9, 72 A.3d 512; *Nader I*, 2012 ME 57, ¶ 22, 41 A.3d 551; *Schelling*, 2008 ME 59, ¶ 6, 942 A.2d 1226; *Maietta Constr., Inc.*, 2004 ME 53, ¶ 6, 847 A.2d 1169; *Morse Brothers, Inc., v. Webster*, 2001 ME 70, ¶ 15, 772 A.2d 842. Both the highest courts of other states and academic analysts have made similar statements regarding the basic purpose of these statutes. *See Davis v. Cox*, 351 P.3d 862, 874-75 (Wash. 2015); *Duracraft Corp.*

*v. Holmes Prods. Corp.*, 691 N.E.2d 935, 940-41 (Mass. 1998); Steven J. André, *Anti-SLAPP Confabulation and the Government Speech Doctrine*, 44 Golden Gate U. L. Rev. 117, 119 (2014); Leah McGowan Kelly, *Election SLAPPS: Effective at Suppressing Political Participation and Giving Anti-SLAPP Statutes the Slip*, 66 Me. L. Rev. 191, 192 (2013); John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPS*, 26 Loy. L.A. L. Rev. 395, 399 (1993).

[¶31]  In several of our anti-SLAPP cases, we have followed the approach utilized by the Massachusetts Supreme Judicial Court.  *See Gaudette v. Mainely Media, LLC (Gaudette II)*, 2017 ME 87, ¶ 14 & n.2, 160 A.3d 539; *Nader I*, 2012 ME 57, ¶ 22 & n.9, 41 A.3d 551; *Morse Brothers, Inc.*, 2001 ME 70, ¶¶ 15, 17, 772 A.2d 842.  Like us, the Massachusetts Supreme Judicial Court emphasizes the importance of screening out meritless cases.  *See, e.g.*, *Duracraft Corp.*, 691 N.E.2d at 942-43.  Recently, the Massachusetts Supreme Judicial Court dealt with the definition of "actual injury" in the context of a second-stage analysis under the Massachusetts anti-SLAPP statute.  In *477 Harrison Ave., LLC v. JACE Boston, LLC (Harrison I)*, the Massachusetts Supreme Judicial Court held that the plaintiff demonstrated that the defendant's action caused "actual injury" under the second step in a special motion analysis because the instigation of criminal charges caused him "embarrassment" and he "feared" for his financial

health. 74 N.E.3d 1237, 1249 (Mass. 2017); *see also 477 Harrison Ave., LLC v. JACE Bos., LLC (Harrison II)*, 134 N.E.3d 91, 100 (Mass. 2019) (citing *Millennium Equity Holdings, LLC v. Mahlowitz,* 925 N.E.2d 513, 531-32 (Mass. 2010)) (opining that embarrassment and financial concern regarding criminal complaint constitute "actual injury" for purposes of Massachusetts anti-SLAPP statute).

[¶32] In *Harrison II*, the court considered the affidavit of the plaintiff and said the following:

> For purposes of the second stage, we consider the pleadings, as well as the "supporting and opposing affidavits stating the facts upon which the liability or defense is based." In *Harrison I*, for example, we concluded that the developer met its second-stage burden of demonstrating "actual injury" caused by the abutters' application for a criminal complaint by means of an affidavit from the developer's manager stating that he suffered "embarrassment," "that he had to attend a probable cause hearing, and that he feared for the financial health of the plaintiff if the complaint had spawned criminal charges."

*Harrison II*, 134 N.E.3d at 100 n.3 (citations omitted).

[¶33] Once again, we should follow the approach used by the Massachusetts Supreme Judicial Court. Instead, by following the approach we adopted in *Maietta*, we are violating the primary purpose of anti-SLAPP statutes. As in this case, if a plaintiff alleges defamation and loss of reputation because of an allegation of criminal conduct without any allegation of a

quantifiable loss, the case would survive a Rule 12(b)(6) motion to dismiss and a M.R. Civ. P. 56 motion for summary judgment. However, under the narrow definition of "actual injury" we first adopted in *Maietta*, such a case would be dismissed upon a special motion brought pursuant to the anti-SLAPP statute. *Maietta* and its progeny have created a scenario where a meritorious case would be dismissed upon a special motion brought pursuant to Maine's anti-SLAPP statute.

[¶34] As a result of the *Maietta* approach, the law presents an illogical policy allowing meritorious cases to be screened out by the anti-SLAPP statute. For example, if Weinstein had claimed the cost of one therapist visit as damages, he would survive this special motion to dismiss and the case would proceed. In his case before a jury, Weinstein would not be limited to the cost of the one therapist visit, but he would be able to claim all damages available under our common law in a defamation case, including loss of reputation, embarrassment, and loss of standing in the community.

[¶35] It is time to revisit our holding in *Maietta* and define "actual injury" under Maine's anti-SLAPP statute consistently with our traditional definition of "actual injury" in our common law.

## B.    Stare Decisis

[¶36]  I recognize the doctrine of stare decisis and our consistent reliance on *Maietta* in the eighteen years following the decision; however, there are good reasons to revisit our holding in *Maietta*.  It is true that it is our policy, historically, to "stand by precedent" and not "disturb . . . settled point[s] of law." *Myrick v. James*, 444 A.2d 987, 997 (Me. 1982).  However, we also recognize that precedents "do not become totally immune from change for all time."  *Id.* at 998.

> [S]*tare decisis* is not an inflexible rule requiring this court to blindly follow precedents and adhere to prior decisions[,] . . . [and] when it appears that public policy and social needs require departure from prior decisions, it is our duty as a court of last resort to overrule those decisions and establish a rule consonant with our present day concepts of right and justice.

*Id.* (quotation marks omitted).  "[W]e also recognize the dangers of a blind application of [stare decisis] merely to enshrine forever earlier decisions of this court."  *Id.* (quotation marks omitted).  Finally, "where the authorities supporting the prior rule have been drastically eroded and the suppositions on which it rested are disapproved in the better considered recent cases and in authoritative scholarly writings, and the prior holding of the prior case is counterproductive to its purposes, the situation is appropriate for legal change by the court's decision."  *Id.* at 998-99 (alternations and quotations marks omitted).

[¶37] There are many reasons to revisit the holding in *Maietta*. At the time of the *Maietta* decision in 2003, we were interpreting a statute enacted in 1995. The statute was silent as to the procedures and the standards to be used in evaluating special motions brought under the statute. We were not alone in struggling to interpret the law. Anti-SLAPP statutes were being enacted all across the country, and there were very few cases interpreting the new procedures and terms contained in these anti-SLAPP statutes. Courts struggled with the constitutional conflicts created by the statutes. *See Duracraft Corp.*, 691 N.E.2d at 943 (describing the problem as a "conundrum [that] has troubled judges and bedeviled the statute's application").

[¶38] We have a tortured history as a court in dealing with many aspects of this statute. We struggled with the burden of proof in special motions brought under the statute. Initially we held that the defendant/moving party was to be given the benefit of all favorable inferences, *Morse Brothers, Inc.*, 2001 ME 70, ¶ 18, 772 A.2d 842, a rule that we characterized as a "converse summary-judgment-like standard,"[9] *Nader I*, 2012 ME 57, ¶ 32, 41 A.3d 551.

_____

[9] In *Nader v. Maine Democratic Party* (*Nader I*), 2012 ME 57, ¶ 29, 41 A.3d 551 we used the term "converse-summary-judgment[-]like standard," to describe the burden of proof for special motions brought under the anti-SLAPP statute. *See* John G. Osborn & Jeffrey A. Thaler, *Maine's Anti-SLAPP Law: Special Protection Against Improper Lawsuits Targeting Free Speech and Petitioning*, 23 Me. Bar J. 32, 37 (2008).

In *Nader I*, to avoid an unconstitutional application of the statute, we overruled *Morse Brothers, Inc.*, and changed the standard to the usual motion-to-dismiss practice giving the plaintiff/nonmoving party all favorable inferences. *Id.* ¶ 36.

[¶39] Six years later, in *Gaudette v. Davis* (*Gaudette I*), we described the problem of reconciling the plaintiff's constitutional right to access the courts with the defendant's right to petition the government as a "tension between at least these two coexistent constitutional rights." 2017 ME 86, ¶ 6, 160 A.3d 1190. We abandoned the approach we adopted in *Nader I* by holding that the plaintiff's presentation of prima facie evidence as to the elements necessary to defeat a special motion to dismiss was not sufficient to defeat a special motion, and we added a third step whereby the trial court would review affidavits or conduct an evidentiary hearing and then adjudicate disputed facts by a preponderance of the evidence. *Id.* ¶¶ 16-18. Then, four years later in *Thurlow*, we admitted that we had gone too far in *Gaudette I* because we infringed upon another constitutional right—the plaintiff's right to have a jury decide disputed issues of fact. *Thurlow*, 2021 ME 58, ¶¶ 16-19, 263 A.3d 494. We held that this third step violated the plaintiff's right to have a jury decide disputed facts.[10] *Id.*

---

[10] The right to a jury trial was not raised as an issue in *Gaudette v. Davis (Gaudette I)*, 2017 ME 86, 160 A.3d 1190.

¶¶ 18-20. We reinstated the process that we had adopted in *Nader I*, holding that the plaintiff/nonmoving party's presentation of prima facie evidence was sufficient to defeat a special motion to dismiss. *Id.* ¶ 19.

[¶40] The Washington Supreme Court, in holding that the Washington anti-SLAPP statute was unconstitutional, stated, "We hold [Washington's anti-SLAPP statute] violates the right of trial by jury under article I, section 21 of the Washington Constitution because it requires a trial judge to invade the jury's province of resolving disputed facts and dismiss—and punish—*nonfrivolous claims without a trial*." *Davis*, 351 P.3d at 875 (Wash. 2015) (emphasis added).

[¶41] Members of this Court have also raised constitutional concerns about this law in the past. In his concurrence to *Nader I*, Justice Silver wrote that "[t]he analytical acrobatics necessary here to reconcile the Constitution with the language of the statute and with our previous interpretations of it indicates that, as written, this statute presents serious constitutional questions." *Nader I*, 2012 ME 57, ¶ 51 41 A.3d 551 (Silver, J., concurring). More recently in *Franchini v. Investor's Business Daily, Inc.*, Justice Hjelm also called attention to issues with the statute, stating that "[i]f anything, the problems inherent in [Maine's anti-SLAPP statute], and our continuing efforts to fashion

a constitutionally sound and workable process to implement the statute, make it difficult to conclude with assurance that there is 'clear controlling precedent[]' for much of anything related to that statute."  2022 ME 12, ¶ 51, --- A.3d --- (Hjelm, A.R.J., dissenting) (third alteration in original).

[¶42]  After a review of our jurisprudence in the context of the numerous changes we have made with our interpretations of this flawed statute it does not make any legal sense to continue following the prevailing precedent adopted in *Maietta*.  It would have been better for the Legislature to give us guidance on whether it intended to change the common-law definition of "actual injury" and what standards we should be following in reviewing special motions to dismiss.

[¶43]  Moreover, the decision for us "is less a matter of honoring *stare decisis* than a matter of resolving the sharp and hitherto unexplained conflict" between our anti-SLAPP jurisprudence and the common law of defamation. *Bank of N.Y. Mellon v. Shone*, 2020 ME 122, ¶ 23, 239 A.3d 671.  We should resolve this conflict and harmonize the law by construing "actual injury" under Maine's anti-SLAPP statute consistently with our common-law definition of "actual injury."

## C.    Application

[¶44]  Weinstein has alleged damages that would be recoverable in a defamation lawsuit brought in Maine.  In his complaint and affidavit, he alleges a loss of his reputation, a loss to his standing in the community, and/or emotional distress as follows.

- Paragraph seventeen of Weinstein's complaint states: "These statements have caused actual harm to Plaintiff's reputation and livelihood and have inflicted emotional distress."

- Paragraph twenty-one of Weinstein's complaint states: "The statements either are defamatory per se or caused special harm to the plaintiff, in that the Defendant's statements harmed the character and reputation of the plaintiff . . . ."

- Paragraph nineteen of the Weinstein's affidavit states that he was "caused to suffer embarrassment, shame and emotional distress."

- Paragraph twenty-five of Weinstein's affidavit states: "These statements have caused actual harm to my reputation with members of those Boards [Maine and Massachusetts Overseers of the Bar]."

[¶45]  For the reasons stated above, I believe that we should conclude that Weinstein has satisfied the requirement of presenting a prima facie case of actual injury under Maine's common law.[11]  There is merit to Weinstein's case,

---

[11]  The claim for damages in Weinstein's case is the garden-variety claim of emotional distress associated with a defamation case and not an element of the tort, as it would be with the tort claim of intentional infliction of emotional distress.  The Court's opinion cites *Lyman v. Huber*, 2010 ME 139, ¶ 23, 10 A.3d 707, and *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶¶ 4-8, 26, 48

32

and but for our narrow definition of "actual injury," he would be entitled to proceed forward with his case.

## II. PRIVILEGE

[¶46] The Court's opinion holds that Narowetz was entitled to absolute immunity regarding her testimony before the Dental Board, but it does not discuss whether Narowetz was entitled to any immunity regarding complaints she made to the Overseers of the Bar in Maine and Massachusetts and the USPS. Court's Opinion ¶ 15. The Court's opinion does not discuss those claims because it affirms the trial court's dismissal of those claims pursuant to Narowetz's special motion to dismiss brought under Maine's anti-SLAPP statute. Court's Opinion ¶ 14. Because I believe that we should vacate the dismissals made by the trial court pursuant to Narowetz's special motion, we need to address whether Narowetz was protected by immunity regarding those claims.

---

A.3d 774, both involving claims for intentional infliction of emotional distress, for the principle that emotional distress must be "so severe that no reasonable person could be expected to endure it." Court's Opinion ¶ 11 (quoting *Schelling v. Lindell*, 2008 ME 59, ¶ 25, 942 A.2d 1226 (quotation marks omitted)). However, these standards of review involving emotional distress apply only when the cause of action is an independent tort (intentional infliction of emotional distress) and not when emotional distress is claimed as damages incidental to another tort, such as negligence or defamation. *See* Horton & McGehee, *Maine Civil Remedies*, § 4-3(c)(2) (4th ed. 2004) ("In addition to being an element of damages, mental anguish or emotional distress may be actionable as either or both of two *independent torts*: negligent infliction of emotional distress and intentional infliction of emotional distress." (emphasis added)).

[¶47]　　There are two classes of privilege created by law: absolute privileges and qualified privileges.　Restatement (Second) of Torts ch. 25, topic 2, tit. B intro note (Am. L. Inst. 1977).　Absolute privileges recognize that people of a particular position or status should be free from fear that what they do or say may have an adverse impact upon them.　*Id.*　Qualified privileges are based upon a public policy that recognizes that it is desirable that true information be given whenever necessary for the protection of the speaker, third persons, or the general public.　*Id.*　In a Maine case directly on point, we have said that "[a]ny person has a qualified privilege to make statements to law enforcement or regulatory agencies regarding the conduct of others, where the person making the statement believes in good faith that the statement is true and indicates that a statutory standard administered by the agency may have been violated."　*Truman v. Browne*, 2001 ME 182, ¶ 15, 788 A.2d 168.

[¶48]　　Here, Narowetz made complaints to various regulatory agencies. She filed a complaint with the Overseers of the Bar in Maine and Massachusetts, alleging harassment and intimidation by Weinstein.　She also made a complaint to the USPS, alleging that Weinstein was impersonating a postal employee, a federal crime.　These statements are allegedly defamatory in that they pertain to Weinstein's profession as a lawyer and accuse him of violating the law.

Narowetz has admitted that the statements were false. At this stage of the proceedings, Narowetz is not entitled to a Rule 12(b)(6) dismissal based on an absolute privilege for claims that relate to complaints or statements made to Boards of Overseers and the USPS. If Weinstein can convince the fact finder by a preponderance of the evidence that "*either* that the utterer 'knew [her] his statement to be false or recklessly disregarded its truth or falsity, i.e., entertained a high degree of awareness of probable falsity or serious doubt as to the truth of the statement' . . . *or* 'acted entirely out of ill will' toward [Weinstein]," then he may overcome the privilege. *Baker v. Charles*, 919 F. Supp. 41, 45 (D. Me. 1996) (quoting *Staples v. Bangor Hydro-Elec. Co.*, 629 A.2d 601, 604 (Me. 1993).

[¶49] The Court relies upon a number of cases to support its conclusion that Narowetz was entitled to absolute immunity, *see* Court's Opinion ¶ 15, but none of these cases specifically speak to Weinstein's claims relating to Narowetz's complaints to the regulatory agencies. In *Truman*, 2001 ME 182, ¶ 15, 788 A.2d 168, we relied on *Baker v. Charles*, 919 F. Supp. 41, 44 (D. Me. 1996), a Maine federal district court case that held that qualified privilege applied to communications to a government agency like Maine's Land Use Regulation Commission, and we also adopted section 598 of the

Restatement (Second) of Torts. *See* Restatement (Second) of Torts § 598 (Am. L. Inst. 1977).

[¶50]  Although Narowetz is entitled to absolute immunity for her communications with and testimony before the Dental Board, *see LaPlante v. United Parcel Serv., Inc.*, 810 F. Supp. 19, 21 (D. Me. 1993), her statements to the Maine Board of Overseers of the Bar, the Massachusetts Board of Bar Overseers, and the USPS are entitled to only qualified immunity, *see Truman*, 2001 ME 182, ¶ 15, 788 A.2d 168.

## D.    Conclusion

[¶51]  Thus, although I agree that Count 2 of Weinstein's complaint, which alleges slander in the proceedings before the Board of Dental Practice Board, was properly dismissed, I would vacate the Superior Court's judgment dismissing Counts 1, 3, 4, and 5 upon Narowetz's special motion to dismiss brought under Maine's anti-SLAPP statute.  Furthermore, because I believe that Narowetz's statements made to the Maine Board of Overseers of the Bar, the Massachusetts Board of Bar Overseers, and the USPS were entitled only to qualified immunity, Counts 1, 3, 4, and 5 should not be dismissed pursuant to Rule 12(b)(6) of the Maine Rules of Civil Procedure.  Thus, I would remand for further proceedings on Counts 1, 3, 4, and 5, as well as Count 7, which seeks

punitive damages based on those claims, except to the extent that those counts allege tortious conduct in the proceedings before the Board of Dental Practice.

---

STANFILL, C.J., *dubitante*.[12]

[¶52] I think the tortured evolution of our anti-SLAPP jurisprudence has taken several wrong turns. As recently stated, "our jurisprudential efforts to properly interpret and determine the proper use of section 556 and the process governing it have been valiant, but the results have been nothing short of fluid." *Franchini v. Inv.'s Bus. Daily, Inc.*, 2022 ME 12, ¶ 51, --- A.3d --- (Hjelm, A.R.J., dissenting).[13] I agree that our case law interpreting 14 M.R.S. § 556 (2021)

---

[12] A dubitante . . . opinion indicates that "the judge doubted a legal point but was unwilling to state that it was wrong." Said Lon Fuller, "Expressing the epitome of the common law spirit, there is the opinion entered dubitante—the judge is unhappy about some aspect of the decision rendered, but cannot quite bring himself to record an open dissent."

Jason J. Czarnezki, *The Dubitante Opinion*, 39 Akron L. Rev. 1, 2 (2006) (footnote omitted). *See Am. Inst. for Int'l Steel, Inc. v. United States*, 376 F. Supp. 3d 1335, 1345 n.1 (Ct. Int'l Trade 2019) (Katzmann, J., *dubitante*) ("The dubitante opinion has also been issued where—as I do in the case before us now—a judge considers himself or herself to be constrained or bound by precedent, but wishes to suggest an alternative view.")

[13] As Justice Hjelm further notes, "the problems inherent in section 556, and our continuing efforts to fashion a constitutionally sound and workable process to implement the statute, make it difficult to conclude with assurance that there is clear controlling precedent for much of anything related to that statute." *Franchini v. Inv.'s Bus. Daily, Inc.*, 2022 ME 12, ¶ 51, --- A.3d --- (Hjelm, A.R.J., dissenting) (alteration and quotation marks omitted).

compels the result the majority reaches. I also agree with the dissent that we have taken a wrong turn in defining "actual injury" as used in section 556, with the result that meritorious cases are dismissed. I write *dubitante* and decline to join the dissent, however, because the doctrine of stare decisis cautions that the fact that a case was wrongly decided may be insufficient justification to overrule it. *See e.g.*, *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 455-56 (2015). And, despite the twisting path of our jurisprudence, the Legislature has not altered the statute. *See Charlton v. Town of Oxford*, 2001 ME 104, ¶ 24, 774 A.2d 366.

[¶53] There is value in correcting our course if we have erred, but I share the concern publicly expressed by other jurists that when we easily overrule precedent, we risk further undermining public confidence in the independence of the courts at a time when that public confidence has waned.[14] I invite the Legislature to revisit the anti-SLAPP statute in light of legal developments in Maine and other states since it was enacted.

---

[14] *See, e.g.*, Transcript of Oral Argument at 14-15, *Dobbs v. Jackson Women's Health Org.*, --- U.S. --- (2022) (No.19-1392), (comments of Justice Sotomayor), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2021/19-1392_gfbi.pdf.

38

Neal L. Weinstein (orally), appellant pro se

Janna L. Gau, Esq., and Alfred J. Falzone III, Esq. (orally), Eaton Peabody, Bangor and Portland, for appellees Old Orchard Beach Family Dentistry, LLC, and Marina Narowetz

York County Superior Court docket number CV-2020-71
FOR CLERK REFERENCE ONLY